**Sylvia Baiz**
California State Bar No. 124367
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410

Attorneys for Defendant **Aurelio Sanchez-Luna**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. JEFFREY T. MILLER**)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AURELIO SANCHEZ-LUNA,<br><br>Defendant. | Criminal No. 08CR0141-JM<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION |

**I.**

**STATEMENT OF FACTS**

The statement of facts and the facts discussed in the memorandum of points and authorities, are strictly for the purposes of this motion and are not to be considered admissions by the defendant, Aurelio Sanchez. Mr. Sanchez expressly reserves the right to contradict, explain, amplify, or otherwise discuss any of the facts mentioned here at trial.

**A. December 4, 2007**

Mr. Sanchez was arrested on December 4, 2008 as he entered the United States through the Otay Mesa port of entry. He was the driver of a car which was alleged to have 3 packages of marijuana weighing 3.94 grams of marijuana hidden underneath the hood of the car. The declaration in support of the complaint by ICE agent Bracamontes indicates that there was 3.94 kilograms of marijuana found hidden in the car, but the evidence processing slip prepared by the customs officers involved indicates that there was only 2.32 kilograms of marijuana. See exhibits A, original complaint and B, evidence slip. Mr. Sanchez relied on

the assessment of the amount of marijuana found by customs, not the amount contained in the complaint, which was prepared by officer Bracamontes.

On December 23, 2007, counsel submitted a document indicating his acceptance of the pre-indictment fast track offer made by the government. See exhibit "C" acceptance of offer. Government counsel was later informed of the discrepancy in the amount of marijuana in December after receiving the fast track offer. Government counsel did not respond. On January 2, 2008, Mr. Sanchez elected not to accept the offer due to the discrepancy and informed the government that he would not be accepting the government's offer.[1] On January 3, 2008, Mr. Sanchez appeared in court at 9:00 a.m. and informed the court that he would not be waiving indictment in his case. The government sought a continuance to seek an indictment, however, the court denied it and set the matter for a preliminary examination for the same day at 2:00 pm. On January 3, 2008 at 2:00 p.m., Mr. Sanchez appeared in court and was prepared to cross-examine the agent during the preliminary examination. However, instead of putting the agent on the stand to show probable cause for the complaint, the government moved to dismiss the complaint. See exhibit D, docket entries for original complaint in case 07mj2814 and order dismissing complaint. The same agent, Carol Bracamontes, then went into chambers and provided a new complaint for the judges' signature which he signed. This complaint was the exact same complaint filed on December 5, 2007 after Mr. Sanchez's arrest. The complaint was filed that same afternoon and Mr. Sanchez was arraigned on the new complaint and bond conditions were set. See exhibit F, second complaint in case 08mj0022.

Mr. Sanchez was subsequently indicted on January 16, 2008 for importing and possessing with intent to distribute 3.94 kilograms of marijuana. In addition, on that same date, January 16, 2008, Mr. Sanchez was also re-indicted for importing and possessing with

---

[1] Counsel for Mr. Sanchez was out of the district between December 26, 2007 and January 2, 2008 and did not learn until January 2, 2008 that Mr. Sanchez did not want to accept the government's offer due to the discrepancy in the reported weight of the marijuana seized.

the intent to distribute 29.25 kilograms of marijuana on September 12, 2005. See exhibit E, indictment of January 16, 2008.

**B. September 12, 2005.**

Mr. Sanchez was arrested on September 12, 2005 at the Otay Mesa port of entry as he attempted to enter the United States. The 1994 Jeep Cherokee he was driving was alleged to contain 29.25 kilograms of marijuana hidden in the spare tire and the gas tank. This case was dismissed on August 11, 2006 by Judge Houston. See Exhibit G, order dismissing case no. 05CR1661-JAH. The court records do not disclose the reasons for the government's decision to dismiss case no. 05CR1661. However, counsel can surmise that the government chose to dismiss the case because the government destroyed the narcotic evidence in that case in contravention of the district court's order to preserve and allow the defense to examine and re-weigh it.

## II.
## MOTION TO COMPEL DISCOVERY

Mr. Sanchez requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4) and 16:

(1) all written and oral statements made by Mr. Sanchez relating in all of his prior arrests. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Sanchez are contained. It also includes the substance of any **oral statements which the government intends to introduce at trial relating to any of his prior arrests.** Mr. Sanchez specifically also requests copies of audio or visual recordings of any statements made by him. These are all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). Mr. Sanchez also requests any response to any Miranda warnings which may have been given to him. See United States v. McElroy, 697 F.2d 459 (2d Cir. 1982);

(2) all documents, statements, agents' reports, and tangible evidence favorable to Mr. Sanchez on the issue of **guilt or punishment** and/or which affects the credibility of the

government's case. Mr. Sanchez specifically requests all exculpatory evidence related to the reasons for the government's dismissal in case no. 05CR1661-JAH. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

(3) all evidence, documents, records of judgments and convictions, photographs and tangible evidence, and information pertaining to any prior arrests and convictions or prior bad acts. Mr. Sanchez specifically requests any evidence demonstrating that he previously evaded checkpoints or border patrol agents. Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B). Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)© and Fed. R. Evid. 404(b) and 609;

(4) all evidence seized as a result of any search, either warrantless or with a warrant, in this case. Including any evidence obtained by the government in his previous arrests, including results from government queries or subpoenaed to telephone companies for Mr. Sanchez' cellular telephones. He also specifically requests copies of all photographs, videotapes or recordings made in this case. This is available under Fed. R. Crim. P. 16(a)(1)©;

(5) all arrest reports, investigator's notes, memos from arresting officers, sworn statements and prosecution reports pertaining to Mr. Sanchez's arrests. These are available under Fed. R. Crim. P. 16(a)(1)(B) and ©, Fed. R. Crim. P. 26.2 and 12(I);

(6) the personnel file of the interviewing agent(s) containing any complaints of assaults, abuse of discretion and authority and/or false arrest. Pitchess v. Superior Court, 11 Cal. 3d. 531, 539 (1974). In addition, the defense requests that the prosecutor examine the personnel files of all testifying agents, and turn over Brady and Giglio material reasonably in advance of trial. United States v. Henthorne, 931 F.2d 29, 30-31(9th Cir. 1991). If the prosecutor is unsure as to whether the files contain Brady or Giglio material, the files should be submitted to the Court, in camera. Id. The prosecution should bear in mind that there exists an affirmative duty on the part of the government to examine the files. Id.;

(7) any and all statements made by any other charged or uncharged defendants. The defense is entitled to this evidence because it is material to preparation for the defendant's case and potentially Brady material. Also, insofar as such statements may be introduced as co-conspirator statements, they are discoverable. Fed. R. Crim. 16(a)(1)© and Brady. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976); Mr. Sanchez also requests copies or any other evidence of co-defendant's statements to review for purposes of whether a motion to sever any other defendant's is appropriate. See United States v. Tootick, 952 F.2d 1078 (9th Cir. 1991); United States v. Vigil, 561 F.2d 1316 (9th Cir. 1977); United States v. Echeles, 352 F.2d 892 (7th Cir. 1965).

(8) Mr. Sanchez requests copies of any and all audio/video tape recordings made by the agents in this case and any and all transcripts, including tape recordings of any conversations of any of the agents involved in this case. This evidence is available under Fed. R. Crim. P. 16(a)(1)©;

(9) Mr. Sanchez specifically requests the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

(10) all other documents and tangible objects, including photographs, books, papers, documents, photographs, or building or places or copies of portions thereof which are material to Mr. Sanchez's defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Sanchez. Mr. Sanchez also requests access to all his personal belongings seized, including his wallet, any clothes he was wearing at the time of his arrest and any baggage he had with him. Rule 16(a)(1)©;

(11) all results or reports of scientific tests or experiments, or copies of which are within the possession, control, or custody of the government or which are known or become

known to the attorney for the government, that are material to the preparation of the defense, including the opinions, analysis and conclusions of experts consulted by law enforcement including finger print specialists in the instant case. Mr. Sanchez specifically request information regarding the weight or confirmation of the substance alleged to be marijuana in the instant case. These must be disclosed, once a request is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro. 16(a)(1)(D).

(12) any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, agreement to execute a voluntary return rather than deportation or any other kind of agreement or understanding between any prospective government witness and the government (federal, state and local), including any implicit understanding relating to criminal or civil income tax liability. United States v. Shaffer, 789 F.2d 682 (9th Cir. 1986); United States v. Risken, 788 F. 2d 1361 (8th Cir. 1986); United States v. Luc Levasseur, 826 F.2d 158 (1st Cir. 1987);

(13) any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed. Brown v. Duggen, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that witness sought plea bargain is to be disclosed, even if no deal struck); Haber v. Wainwright, 756 F.2d 1520, 1524 (11th Cir. 1985);

(14) any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction. See Rule 608(b), Federal Rules of Evidence and Brady;

(15) any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.), cert. denied, 474 U.S. 945 (1985); and,

(16) any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled

substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. July 11, 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

(17) the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness.. United States v. Cadet, 727 F.2d 1469 (9th Cir. 1984);

(18) the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses);

(20) the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); James v. Jago, 575 F.2d 1164, 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1975);

(21) Mr. Sanchez requests a transcript of the grand jury testimony and rough notes of all witnesses expected to testify at the motion hearing or at trial. This evidence is discoverable under Fed. R. Crim. P. 12(I) and 26 and will be requested pursuant to

(22) Jencks Act Material. The defense requests all material to which defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under §3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991), the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act. The defense requests pre-trial production of Jencks material to expedite cross-examination and to avoid lengthy recesses during the pre-trial motions hearings or trial. Mr.

Sanchez specifically requests rough notes regarding the interview of Mr. Sanchez, especially if the notes reflect the time and place of those statements. Mr. Sanchez puts the government on notice that he will seek rough notes of any and all testifying agents on the date set for the motion hearing, and requests that the agent/witnesses be instructed to bring the notes to court.

## III.

## COUNTS THREE AND FOUR OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE GOVERNMENT INDICTED MR. SANCHEZ BEYOND THE 30 DAYS ALLOWED BY 18 U.S.C. § 3161(b) AND (d)(1).

The Speedy Trial Act[2], 18 U.S.C. § 3161 *et seq.*, requires the government to obtain an indictment on the charge or charges for which a defendant is arrested within thirty days. The government may indict on new charges, or it may abandon the original charges upon which the defendant is held, but after 30 days it may not indict on the same charge for which the defendant is arrested, 18 U.S.C. §§ 3161(b)and 3162(a)(1).

Section 3161(b) states, in pertinent part,

> Any information or indictment charging an individual with the commission of any offense shall be filed within thirty days from the date on which such individual is arrested or served with a summons in connection with such charges.

Moreover section 3161(d)(1) provides that the 30-day requirement in 3161(b) applies to any subsequent complaint, indictment, or information as may be the case. Specifically, section 3161(d)(1), states if an indictment or information is dismissed **upon the motion of the defendant**, "...or an information or indictment is filed charging the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of section (b) shall be applicable..."

Mr. Sanchez was indicted on January 16, 2008. However, forty-three days had passed between December 5, 2007, his first appearance in court and January 16, 2008, the date of indictment. As mentioned in the statement of facts, on December 23, 2007, counsel submitted a document indicating his acceptance of the pre-indictment fast track offer made by the

---

[2] Also referred to as "STA."

government. See exhibit "C" acceptance of offer. Government counsel was later informed of the discrepancy in the amount of marijuana in December after receiving the fast track offer. Government counsel did not respond. On January 3, 2008, Mr. Sanchez elected not to accept the offer due to the discrepancy and informed the government that he would not be accepting the government's offer.[3] On January 3, 2008, Mr. Sanchez appeared in court at 9:00 a.m. and informed the court that he would not be waiving indictment in his case. The government sought a continuance to seek an indictment, however, the court denied it and set the matter for a preliminary examination for the same day at 2:00 pm. On January 3, 2008 at 2:00 p.m., Mr. Sanchez appeared in court and was prepared to cross-examine the agent during the preliminary examination. However, instead of putting the agent on the stand to show probable cause for the complaint, the government moved to dismiss the complaint. See exhibit D, docket entries for original complaint in case 07mj2814 and order dismissing complaint. The same agent, Carol Bracamontes, then went into chambers and provided a new complaint for the judges' signature which he signed. This complaint was the exact same complaint filed on December 5, 2007 after Mr. Sanchez's arrest. The complaint was filed that same afternoon and Mr. Sanchez was arraigned on the new complaint and bond conditions were set. See exhibit F, second complaint in case 08mj0022.

This court has held that where the charges in the complaint and a later indictment are brought under the same statute, such charges shall be dismissed, pursuant to section 3161(b), when the indictment is filed after the 30 days have passed. United States v. Palomba, 31 F.3d 1456, 1464 (9th Cir. 1994). The defendant in Palomba had been charged in an untimely manner with an offense which was contained in the complaint (mail fraud), "but which was not preserved against Section 3162(a)(1) dismissal either by such facial factual differences or by inclusion in the timely original indictment." Id. Similarly, in the present case, the

---

[3] Counsel for Mr. Sanchez was out of the district between December 26, 2007 and January 2, 2008 and did not learn until January 3, 2008 that Mr. Sanchez did not want to accept the government's offer due to the discrepancy in the reported weight of the marijuana seized.

government initially charged Mr. Sanchez with possession and importation of 3.94 kilograms of marijuana in violation of Title 21U.S.C. §§ 952 and 960 and abandoned that charge by dismissing the complaint on January 3, 2008 then refiling a complaint based on the same facts that same day. However, it did not indict Mr. Sanchez based on these same facts until January 16, 2008, 43 days after his initial appearance in court after his arrest on December 4, 2007. Section 3161(b) was clearly violated.

In United States v. Pollock, 726 F.2d 1456, 1462 (9th Cir. 1984), this Court also dismissed an indictment for violation of section 3161(b). There the government had obtained extensions of the 30 day time limit based on problems with witnesses subpoenaed before the grand jury. Pollock, 726 F.2d at 1460-1461. However, the time which was excluded did not cover all the time beyond the 30 days which passed before the indictment was filed. Pollock, 726 F.2d at 1461. The Court noted that the continuance of the case beyond the 30 days without specific exclusions of time appeared to be the result of negligence or inadvertence. Id. The court then held, "[t]o invoke the sanction of dismissal provided by section 3162(a)(1), however, we need not inquire whether the delay in Pollock's case resulted from mere inadvertence or bad faith on the part of the government. . . . The triggering of the sanction is unambiguous: if the indictment is not filed within 30 days of arrest, the charge contained in the complaint shall be dismissed." Pollock, 726 F.2d at 1462.

So too, it does not matter that the *attorneys* may have, in good faith, been working towards a plea agreement in the present case. The statute is unambiguous. At least 43 unexcluded days had passed between Mr. Sanchez' arrest on the complaint and the filing of the indictment on January 16, 2008. Whether through ignorance, negligence or inadvertence, the speedy trial act was violated. Consequently, the indictment must be dismissed.

The government will argue that because the original complaint was dismissed on January 3, 2008 and a new complaint charging the exact same charge was filed on that same date, that the STA began to run anew. However, the STA requires any indictment be filed

within thirty days from the date of arrest under § 3161(b). 18 U.S.C. § 3161(b); United States v.Pollock, 726 F.2d 1456, 1462 (9th Cir. 1983); United States v. Heldt, 745 F.2d 1275, 1280 (9th Cir. 1984). When a charge is dismissed and another indictment is filed charging a defendant with the same offense or an offense based on the same conduct or arising out of the same episode, § 3161(b) applies with respect to the subsequent indictment. 18 U.S.C. § 3161(d)(1) (2004)(emphasis added). Section 3161(b) requires any charge be dismissed where the indictment has not been filed in conformance with the time requirements of § 3161(b). Dismissal is not conditioned on a showing of bad faith on the part of the Government. Pollock, 726 F.2d at 1462 ("triggering of the sanction is unambiguous").

The test for determining whether a charge should have been charged in the original indictment is whether the offenses to be dismissed are apparent on the face of the complaint or original indictment. Id. If the charges in any subsequent indictment arise under the same statute as the charges in the original indictment, they must still comply with the thirty-day time limit of 3161(b). See United States v. Palomba, 31 F.3d 1456, 1463 (9th Cir. 1994).

In this case, the Government initially charged Mr. Sanchez with having violated 21 U. S. C. §§ 952 and 960 for importing and possessing 3.94 kilograms of marijuana. The Indictment filed on January 16, 2008 included counts for both §§ 952 and 960. Because the facts upon which the Indictment is predicated were present at the time of Mr. Sanchez arrest, the time calculation for purposes of the STA began on December 5, 2008 for both the charges in counts three and four..

All facts relied upon for the charges in counts 3 and 4 of the Indictment were present at arrest. Thus, the Court should calculate time under the STA beginning at the initial date of appearance in court--on December 5, 2008 for *both* counts, and find the Government violated the STA due to the Indictment being filed more than thirty days after arrest.

**A.. Although "Excludable Time" May Allow for Prolonging the Initiation of an Indictment Proceeding, There Was No Excludable Time Between Mr. Sanchez's Arrest And the Indictment Forty-three Days Later.**

Time may be excluded under the STA § 3161(h)(1) computations for "other

proceedings," such as in the case of a defendant who waives indictment. See Lopez-Osuna, 242 F.3d at 1195. However, "[n]egotiation of a plea bargain is not one of the factors supporting exclusion." United States v. Ramirez-Cortez, 213 F.3d 1149, 1155 (9th Cir. 2000) (quoting United States v. Perez- Reveles, 715 F.2d 1348, 1352 (9th Cir. 1983)). In this case, Mr. Sanchez did not waive indictment. Counsel for Mr. Sanchez informed the Government as soon as she learned that Mr. Sanchez (which admittedly was the day before he was supposed to waive indictment) that he would not waive indictment. Instead of preparing to present evidence of probable cause, the government decided to request a continuance on January 3, 2008 of the preliminary hearing date which the magistrate judge denied. The preliminary hearing was then set for that afternoon. However, the government moved to dismiss the complaint and present a new complaint through its witness, agent Carol Bracamontes was present in court on January 3, 2008–the same agent who presented the original complaint on December 5, 2007. .

As this case demonstrates, there is good reason to prohibit the indefinite exclusion of time for the negotiation of plea bargains. Here, the plea had been offered to the defendant but the defendant, having initially accepted the offer, then refused it because the government claimed in the complaint that he imported 3.94 kilograms, but the discovery indicated that it was only 2.32 kilograms.. The “negotiations” were over when the government failed explain why there was a discrepancy . While this was well-intentioned -- it is not “other proceedings” of the type envisioned by the Act. To allow courts to grant continuances any time the attorneys want more time to persuade one party to accept the plea offer would undermine the purpose of the act. See generally, United States v. Perez-Reveles, 715 F.2d 1348, 1352 (holding that “negotiations of a plea bargain is not one of the factors supporting exclusions provided in section 3161(h)(8)(B) [exclusion for the ends of justice]”).

There is no basis to exclude the 43 days of unexcluded time. The Speedy Trial Act violated when the government filed the indictment of January 16, 2008. Under Title 18 U.S.C § 3162(a)(2) dismissal of indictment in the instant case is necessarily triggered by the

violation. see, Pollock, 726 F.2d at 1462.

**B. The Counts Three and Four Should Be Dismissed With Prejudice.**

Although the delays in the instant case result in a clear violation of the Speedy Trial Act, this court must still determine whether the dismissal is to be with or without prejudice. According to the Speedy Trial Act,

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

Title 18 U.S.C. § 3162(a)(2). In United States v. Taylor, 487 U. S. 326, 108 S.Ct. 2413 (1988), the Supreme Court attempted to inject some meaning into this somewhat obscure list of criteria. First, the court held that district courts, who were granted the discretion to apply this portion of the statute, must specifically state the basis for a finding of prejudice or no prejudice. Id. at 2420; see also, United States v. White, 864 F.2d 660 (9th Cir. 1988) (reversing district court's dismissal without prejudice for failure to state specifically the reasons for finding of no prejudice). The Court also noted (albeit in dicta) that there is a relation between the amount of delay and the finding of prejudice -- the greater the delay, the more inclined the Court is to find prejudice. Id. at 2421

It is settled that it is "the courts and the government, not the defendant, [who] assume primary responsibility for ensuring that criminal trials proceed expeditiously." United States v. Karsseboom, 881 F.2d 604, 607 (9th Cir. 1989) (reversing district courts denial of the defendant's motion to dismiss and vacating convictions) quoting, United States v. Pollock, 726 F.2d 1456, 1464 (9th Cir. 1984).

In the present case, Mr. Sanchez informed the government prior to the time for waiving indictment that he would not accept the government’s fast-track offer due to the discrepancy in the complaint and the discovery about the amount of marijuana seized after his arrest. Although, Mr. Sanchez informed the government only a day before the date set for

the waiver of indictment, the government did not have to dismiss the complaint, but could have presented its witness, agent Carol Bracamontes, who was present at the time set for the pre-liminary hearing. Instead, the government chose what it thought was the easy way out and dismissed the complaint, then had Agent Bracamontes meet with the magistrate judge to present a new complaint based on the exact same facts relating to the December 4, 2008 arrest of Mr. Sanchez. Mr. Sanchez is and was in custody at all times based on the December 5, 2007 arrest. Moreover, due to the unexplained discrepancy in the amount of marijuana seized and the amount cited in the complaint, Mr. Sanchez cannot be blamed for failing to accept a fast-track offer in which he was expected to agree to an amount of marijuana which was clearly in dispute based on the government's own documentation.

The Ninth Circuit analyzed the factors set forth in section 3162, the sanctions provision of the STA. United States v. Clymer, 25 F.3d 824, 832-33 (9th Cir. 1994). In determining whether to dismiss with or without prejudice in Clymer, the court weighed the "seriousness" of the offense with the seriousness of the delay, as well as the facts and circumstances of the case which led to the dismissal and the impact of a reprosecution on the administration of the Act and of justice.

Although the delays here, do not seem inordinate, the violations of the Act here, caused irreparable harm to Mr. Sanchez. As noted infra, the government re-filed a previous case which had been dismissed in which Mr. Sanchez was charged with importing 29.25 kilograms of marijuana. This has cause Mr. Sanchez to be faced with a sentence that is more than three times higher than the low-end of the guideline range for an offense involving 3.94 kilograms of marijuana.

The next factors to be considered are the impact of reprosecution and the administration of the Act and of justice. The very purpose of the Speedy Trial Act was to secure a manner in which to enforce a defendant's right to a Speedy Trial under the Sixth Amendment of the U. S. Constitution. The Second Circuit reversed a district court in United States v. Caparella, 716 F.2d 976 (9th Cir. 1983) holding that the indictment should have

been dismissed with prejudice. There the basis for the dismissal of the complaint was the prosecutor's negligence in obtaining an indictment or an information within 30 days of the defendant's arrest. Id. at 977. The district court granted the government's motion to dismiss but then allowed the government to later file a one count information and try Mr. Caparella for a misdemeanor violation of Title 18 U.S.C. § 1703(b) (opening mail without authority). Mr. Caparella was found guilty at his bench trial. Id. at 977-978. However, on appeal, the Second Circuit held that the district court should have dismissed the original complaint with prejudice. Specifically, the court found that the crime was not serious; the only reason for the delay was the government's negligence; and the administration of justice was better served by a dismissal with prejudice. Id. at 980-981. The court also considered the district court's finding that the defendant did not suffer any actual prejudice (prejudice to his defense) from the delay. In response, the court stated

> The legislative history of the statute indicates that prejudice to a defendant could properly be considered as one of the facts and circumstances of the case in deciding whether to dismiss with or without prejudice . . . . Nonetheless, given the government's negligent conduct, as discussed, we conclude that the second factor militates in favor of dismissal with prejudice.

Id. at 980.

Similarly, in United States v. Osunde, 638 F. Supp. 171 (N.D.Cal. 1986), the district court for the Northern District of California dismissed a complaint and indictment when the government let 118 days pass between arrest and indictment. The court held that Mr. Osunde was charged with a relatively minor offense (an offense involving immigration and naturalization), the government was responsible for the delay, and the delay was excessive. The court also noted that whatever the result, the government would be seeking to deport Mr. Osunde. Id. at 175-176. Thus, the court dismissed the complaint and the indictment with prejudice.

In the present case, the charges in the indictment are admittedly serious. However, as in Clymer the seriousness of the offense must be weighed against the seriousness of delay or the violation of the STA and the prejudice resulting to the defendant. Finally, a dismissal of

counts three and four of the indictment would certainly serve the administration of justice since Mr. Sanchez is facing a charge with a much higher guideline range in counts one and two.

## IV.
## THE INDICTMENT MUST BE DISMISSED DUE TO VINDICTIVE PROSECUTION

An indictment against a defendant must be dismissed if the defendant can establish a presumption of vindictiveness on behalf of the government or if the defendant is able to establish that the prosecution is motivated by actual vindictiveness. Vindictive prosecution is presumed when the government threatens to increase charges, or follow through on such a threat, in order to discourage a defendant from exercising a constitutional right. United States v. De Marco, 550 F.2d 1224 (9th Cir. 1977). The right to due process of law is violated where the government increases the severity of alleged charges in response to the exercise of constitutional or statutory rights. United States v. Shaw, 665 F.2d 168, 171 (9th Cir. 1981), (citing United States v. Burt, 619 F.2d 831, 836 (9th Cir. 1980)).

In Blackledge v. Perry, 417 U.S. 21 (1974), the defendant was charged with a felony when he appealed seeking a de novo trial on his misdemeanor conviction. The Court stated that, "Imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be . . . a violation of due process of law." Id., at 25, (citing North Carolina v. Pearce, 395 U.S. 711, 724 (1969)).[4] The Blackledge Court stated:

---

[4] In North Carolina v. Pearce, the Court considered the constitutional problems presented when, following a successful appeal and reconviction, a criminal defendant was subjected to a greater punishment than that imposed at the first trial. The Court held that the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be a violation of due process of law. The Court held that vindictiveness against the defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial, and that an increased sentence could not be imposed after retrial unless the sentencing judge placed certain specified findings on the record.

> The rationale of our judgment in the Pearce case . . . was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."

Blackledge, at 28, quoting North Carolina v. Pearce, 395 U.S. at 725. Blackledge and Pearce create a prophylactic rule that when the government increases the penalties or threatens to increase penalties following the defendant's exercise of a constitutional right, a presumption of vindictiveness arises. No actual showing of malice or retaliatory motive is necessary to assert a vindictive prosecution claim. Blackledge, 417 U.S. at 28; see also, United States v. Burt, 619 F.2d 831, 836 (9th Cir. 1980). Rather, vindictiveness will be presumed when the circumstances surrounding the prosecutorial decision at issue create the appearance of vindictiveness. United States v. Robinson, 644 F.2d 1270, 1272 (9th Cir. 1981); see also, United States v. Griffin, 617 F.2d 1342, 1347 (9th Cir) cert. denied 449 U.S. 863 (1980). A presumption arises whenever "it reflects the very real likelihood of actual vindictiveness" on the part of the prosecution. United States v. Martinez, 785 F.2d 663, 668 (9th Cir. 1986) (quoting United States v. Gallegos-Curiel, 681 F.2d 1164, 1167 (9th Cir. 1982)).

In Pearce, the Supreme Court acknowledged the difficulty of showing actual vindictiveness in an individual case. The Court thus held that vindictiveness on the part of the sentencing judge can be presumed whenever a defendant is sentenced more harshly after retrial and no objective reasons for the increased sentence are given. Pearce, 395 U.S. at 726. Later, in Blackledge, the Court extended the holding regarding presumed vindictiveness to situations involving a likelihood of prosecutorial retaliation. Blackledge, 417 U.S. at 27-28. In Blackledge, the defendant appealed for a de novo trial. In response, the prosecutor filed harsher charges that encompassed the exact same conduct. Such actions are presumptively vindictive. Id.

The Supreme Court reaffirmed the holding of Blackledge and Pearce finding a presumption of vindictiveness in Thigpen v. Roberts, 468 U.S. 27 (1984). In Thigpen, as in Blackledge, the defendant appealed his misdemeanor convictions to the superior court

requesting a de novo jury trial. The defendant in Roberts had been convicted of reckless driving, driving while his license was revoked, driving on the wrong side of the road, and driving while intoxicated before a Justice of the Peace. Mr. Roberts had crashed into another car resulting in the death of the passenger in the other car. After Mr. Roberts filed his notice of appeal, a grand jury indicted him for manslaughter based on the same circumstances that resulted in the previous convictions. The Court found the government's justification that since a different prosecutor filed the manslaughter charges, the second charge was not vindictive unpersuasive for two reasons. Id. 468 U.S. at 31. First, the court found that the presumption of vindictiveness reflects "institutional pressure that . . . might . . . subconsciously motivate a vindictive prosecutorial . . response to a defendant's exercise of his right." Id. (quoting, United States v. Goodwin, 457 U.S. 368, 377 (1982). Consequently, the fact that two different individuals were involved was immaterial. Secondly, the court noted that the county prosecutor participated fully after the conclusion of proceedings before the Justice of the Peace Court.

In Adamson v. Ricketts, 865 F.2d 1011 (9th Cir. 1988), the Ninth Circuit found a presumption of vindictiveness which, because un-rebutted, resulted in the dismissal of the charges. Defendant Adamson was charged with the car bombing murder in Arizona of an investigative reporter. Mr. Adamson entered a guilty plea and agreed to cooperate with the government. He provided information that led to the conviction of two others. However, the convictions of these other men were reversed on appeal. The government then sought to secure additional testimony from Adamson on the re-trial. Adamson's attorney wrote a letter in response telling the government that in his opinion, the plea agreement had been fulfilled and they would either further reduce Mr. Adamson's sentence or he could assert his Fifth Amendment right. The State wrote back that it considered this assertion on Mr. Adamson to be a breach of the plea agreement and threatened to re-file the murder charges.

Soon after this interchange, the State called Adamson as a witness at a pretrial proceeding. Adamson testified in part and asserted his Fifth Amendment right when asked

about another crime. Following this, the State filed a new information charging Adamson with first degree murder. After a procedural nightmare, Adamson was convicted by a jury of first degree murder. The court that had previously sentenced Adamson to 48-49 years then sentenced Adamson to death. The Ninth Circuit found that Adamson established a presumption of vindictiveness that had not been rebutted by the government and reversed the conviction remanding for a hearing on the claim of vindictiveness.

In United States v. De Marco, 550 F.2d 1224 (9th Cir. 1977), the Court stated,

> Blackledge and Pearce each establish a prophylactic rule imposing limits upon prosecutorial discretion in seeking new indictments or in conducting retrials when such actions carry with them the opportunity of retaliation for a defendant's exercise of a statutory right that has Due Process implications . . . . The prophylactic rule is designed not only to relieve the defendant who has asserted his right from bearing the burden of "upping the ante" but also to prevent chilling the exercise of such rights by other defendants who must make their choices under similar circumstances in the future.

Id. at 1227.

The De Marco Court upheld the district court's dismissal of the false statements indictment obtained in California because the Court found that the second indictment was the accumulation of governmental efforts designed to discourage or prevent the defendant from asserting his statutory venue rights, and that failure to dismiss the indictment would permit the "potential for vindictiveness" proscribed in Blackledge v. Perry. De Marco, 550 F.2d at 1225.[5]

The facts of the present case are quite similar to the facts of the De Marco and Thigpen cases. After Mr. Sanchez exercised his constitutional right to indictment by a grand jury, the government obtained an indictment which alleges that he not only imported marijuana on December 4, 2007, but alleging also that he imported marijuana on September 12, 2005, an allegation that it had already dismissed in August 2006, carrying a sentence

[5] The De Marco court further noted that the factual nucleus of both indictments was the same. The Court pointed out that while the first indictment did not specifically charge an offense based upon De Marco's interview with IRS agents in California in February of 1974, the statement was part of the evidence that had been presented to the first grand jury.

more than three times higher than that which he was facing with the 3.94 kilograms of marijuana that he allegedly imported on December 4, 2007. De Marco, 550 F.2d at 1226. As in De Marco, the facts upon which the superseding indictment in this case is founded are the exact same facts upon which the initial indictment was based.

The defendant who alleges vindictiveness has the burden of making the initial showing of an "appearance of vindictiveness." United States v. Spiesz, 689 F.2d 1329 (9th Cir. 1982). This prima facie case usually involves a showing that the prosecutor has reindicted the defendant and increased the severity of the charges after the defendant has exercised a statutory or constitutional right. United States v. Bender, 681 F.2d 561, 568-9 (9th Cir. 1981). Thus, in this case, this showing has been made.

Once the defendant shows that charges have been increased after exercising a constitutional or statutory right, the defendant has demonstrated an "appearance of vindictiveness" on the part of the prosecutor. United States v. Shaw, 655 F.2d at 171, (citing United States v. Groves, 571 F.2d at 453).

"It is the appearance of vindictiveness rather than vindictiveness in fact, which controls." Shaw, 665 F.2d at 171. The defendant does not have to demonstrate that the prosecution in fact acted with a "malicious or retaliatory motive . . . Instead, once the defendant makes this prima facia showing, vindictiveness may be inferred." United States v. Burt, 619 F.2d 831, 836 (9th Cir. 1980).

Once the defendant makes this prima facie showing, vindictiveness is presumed. The burden then shifts to the prosecutor to show that any re-indictment or increase in the severity of the charges was not motivated by vindictiveness, but rather, by independent reasons or intervening circumstances. United States v. Shaw, 655 F.2d at 171, (citing United States v. Ruesga-Martinez, 534 F.2d at 1369; United States v. Bender, 681 F.2d at 569; United States v. Burt, 619 F.2d at 836). If the government fails to meet this very high burden, the present indictment against Mr. Sanchez must be dismissed.

V.

**MR. SANCHEZ'S STATEMENTS MUST BE SUPPRESSED.**

Mr. Sanchez was interrogated by agents and he made statements.

It is the government's burden, upon challenge by the defendant, to establish the admissibility of any custodial statement obtained from a defendant. Mr. Sanchez puts the government to its proof on this issue. Custodial interrogation conducted to secure incriminating statements from an accused must be preceded by procedural safeguards. Miranda v. Arizona, 348 U.S. 437 (1966). Once a person is in custody, Miranda warnings must be given before any interrogation. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel." Miranda v. Arizona, 384 U.S. at 475. No evidence or statement obtained through a custodial interrogation may be used at trial unless and until the government demonstrates that the defendant received Miranda warnings prior to the statement and validly waived her rights. Id. 384 U.S. at 479.

If the government contends that Mr. Sanchez waived his Fifth Amendment rights, it must prove that he did in fact waive his rights. The government's burden, in proving a valid waiver of Miranda, is high. 384 U.S. at 475. This Court must "indulge every reasonable presumption against waiver" of Miranda rights. United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984). The validity of the waiver "depends . . . 'upon the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482, reh'g denied, 452 U.S. 973 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In addition to proving Miranda warnings and a valid waiver, the government must also establish, by a preponderance of evidence, that any statement was given voluntarily. Lego v. Twomey, 404 U.S. 477, 484 (1972). This is a separate requirement: a confession admitted in violation of Miranda violates a defendant's Fifth Amendment right against

self-incrimination and his Sixth Amendment right to counsel; a coerced confession also violates a defendant's right to due process of law. See Jackson v. Denno, 378 U.S. 368, 376 (1964).

A voluntary statement is one which is the product of a "rational intellect" and a "free will." Blackburn v. Alabama, 361 U.S. 199, 208 (1960). No one factor is determinative. Rather, this Court must look to the "totality all of the surrounding circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Among the many factors which the Court can weigh is the age of the accused, his education and intelligence, advice as to constitutional rights, length of detention, repeated and prolonged nature of the questioning and use of physical punishments. 412 U.S. at 226. A statement may not be admitted if because of mental illness, drugs, or intoxication, the statement was not the product of a rational intellect and a free will. Gladden v. Unsworth, 396 F.2d 373, 380-81 (9th Cir. 1968).

When law enforcement officers use psychological pressure to break down the will of an accused, all statements elicited thereby are deemed involuntary. See Spano v. New York, 360 U.S. 315 (1959). A confession is involuntary whether it occurs by physical intimidation or psychological pressure. Townsend v. Sain, 307 U.S. 293 (1963). Subtle psychological coercion, either by promises of leniency or indirect threats, may also render a confession involuntary. United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

In the instant case, Mr. Sanchez made several statements after his arrests. He was in custody at the time the agents took his statements. Therefore, the government bears the burden of proving that Mr. Sanchez: 1) was fully advised of his Miranda rights; 2) freely, voluntarily and knowingly waived these rights; and 3) made the statement freely and voluntarily.

To establish the legality and admissibility of the defendant's statements, the government must show compliance with Miranda v. Arizona and establish by a preponderance of the evidence that the defendant's statement was given voluntarily. An

evidentiary hearing in this matter is thus necessary. United States v. Batiste, 868 F.2d 1414 (9th Cir. 1989) (holding that a district court has complete discretion to hold an evidentiary hearing whenever a Fourth Amendment violation is alleged and in footnote 5, implying that an evidentiary hearing must be held if a Fifth Amendment violation is alleged). In addition, Title 18 U.S.C. §3501 requires a hearing on voluntariness prior to the admission of any defendants' statement.

## VI.

## MOTION TO PRESERVE AND RE-WEIGH NARCOTIC EVIDENCE AND ALLOW THE DEFENSE TO INSPECT AND PHOTOGRAPH EVIDENCE SEIZED, INCLUDING THE VEHICLE.

It is hereby requested that the Court issue and order for the government and its agents or preserve the narcotic evidence in this case and permit the defense attorney and her agents to re-weigh it. Mr. Sanchez also requests that the Court order that the government make available for inspection and photographing the physical evidence seized from Mr. Sanchez, including the vehicle and any evidence found on his person or in his possession, and evidence found in the vehicles. For the Court's convenience a proposed order is provided by email and attached to the motion for its perusal.

## VII.

## LEAVE TO FILE FURTHER MOTIONS

Because counsel for Mr. Sanchez has not received all discoverable matters at the time the instant motions were drafted, he respectfully requests that he be allowed time to file such additional pretrial motions as may become apparent and necessary

//

//

//

//

//

## VIII.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the court grant the above motion.

Respectfully Submitted,

Date: February 15, 2008

/S/Sylvia A. Baiz
Sylvia Baiz
Attorney for Mr. Sanchez Luna