KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AURELIO LUNA-SANCHEZ,<br><br>Defendant. | Criminal Case No. 08CR0141-JM<br><br>Date: February 29, 2008<br>Time: 11:00 a.m.<br><br>The Honorable Jeffrey T. Miller<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**1) COMPEL DISCOVERY;**<br>**2) DISMISS INDICTMENT DUE TO SPEEDY TRIAL ACT VIOLATION;**<br>**3) DISMISS INDICTMENT DUE TO VINDICTIVE PROSECUTION;**<br>**4) SUPPRESS STATEMENTS;**<br>**5) PRESERVE/RE-WEIGH EVIDENCE AND INSPECT/PHOTOGRAPH EVIDENCE SEIZED; AND**<br>**6) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. The Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On January 16, 2008, a federal grand jury in the Southern District of California returned a four-count indictment against Defendant AURELIO LUNA-SANCHEZ ("Defendant"). The Indictment charges Defendant with one count of importing approximately 29.25 kilograms (64.35 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, one count of possessing approximately 29.25 kilograms (64.35 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), one count of importing approximately 3.94 kilograms (8.67 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, and one count of possessing approximately 3.94 kilograms (8.67 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On January 17, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty. On February 15, 2008, Defendant filed the above captioned motions. The United States files the following response.

## II

## STATEMENT OF FACTS

### A. <u>OFFENSE CONDUCT IN 2005</u>

#### 1. <u>Events Leading to Seizure of Marijuana</u>

On September 12, 2005, at approximately 12:36 a.m., Defendant drove a green, 1994 Jeep Grand Cherokee bearing California license plate number "5PCM316" into the vehicle primary lanes at the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. The United States Customs and Border Protection Officer Gilliland was working the primary inspection lane when Defendant approached in the vehicle. Defendant informed Officer Gilliland that he was not bringing anything back from Mexico and that he was in Michoacan, Mexico, for the last fifteen days. Defendant stated that he was the registered owner of the vehicle, but hen when asked for the vehicle registration, he stated the vehicle belonged to a friend. Officer Gilliland noticed that Defendant became increasingly nervous as evidenced by Defendant not maintaining eye contact and playing with the radio. Officer Gilliland inspected the undercarriage of the vehicle and noticed that it was very clean, which was inconsistent with Defendant's earlier statement. Officer Gilliland asked Defendant about his luggage

and Defendant laughed. Officer Gilliland referred the vehicle to the secondary inspection area.

In the secondary inspection area, Officer Cisneros was on duty at approximately 12:40 a.m., when Defendant drove the green 1994 Jeep Grand Cherokee into the lot. Officer Cisneros notified Canine Enforcement Officer Corvino to inspect the vehicle utilizing her narcotics detector dog. The dog alerted to the spare tire of the vehicle. Officer Corvino notified Officer Cisneros of the alert, and Officer Cisneros escorted Defendant to the security office. A search of the spare tire revealed eight packages containing a green leafy substance, which field-tested positive for marijuana. Officer Cisneros called American Towing to have a certified mechanic remove the gas tank. Thereafter, the gas tank was removed from the vehicle, and a subsequent search revealed twenty-four packages of a green leafy substance, which field-tested positive for marijuana. The thirty-two packages of marijuana weighed a total of 29.25 kilograms. Although the gas tank had six gallons of gas in it, the gas gauge read empty.

Defendant was arrested. Defendant had $1,023 in his possession. The only clothes found in the vehicle was a plaid shirt, a pair of blue jeans, and a pair of tennis shoes.

Gildardo Carillo is the registered owner of the vehicle driven by Defendant. Carillo was arrested on June 9, 2005 for smuggling 54.80 kilograms of marijuana into the United States. He was sentenced to 121 days in San Diego County Jail. Carillo was in custody on the date of Defendant's arrest.

### 2. <u>Post-Miranda Statement</u>

At approximately 4:00 a.m., on September 12, 2005, United States Immigration and Customs Enforcement (ICE) agents advised Defendant was of his <u>Miranda</u> rights. Defendant acknowledged that he understood his <u>Miranda</u> rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant told agents that he had recently moved from Sylmar, California to Sun Valley, California, but could not remember his address. He stated that he placed all of his belongings in storage and traveled to Michoacan, Mexico. He claimed that he left for Mexico on the first or second of September and returned to the United States on September 10. Defendant stated that he sold a Jeep Wrangler in Michoacan for $3,500. He then returned to the United States on September 10 and returned to Tijuana, Mexico, the next day driving his Volkswagen Golf. Defendant left the Volkswagen Golf in Mexico to test drive the 1994 Jeep Grand Cherokee.

Defendant indicated that he was driving to Sun Valley with the Jeep Grand Cherokee and if he liked it, he was going to purchase it for $2,700. Defendant claimed that the Boost mobile phone in his possession was from the company he worked for - AVM Woodworking in Van Nuys, California. Defendant stated that this company paid for the Boost mobile phone.

**B. OFFENSE CONDUCT IN 2007**

**1. Events Leading to Seizure of Marijuana**

On December 4, 2007, at approximately 5:30 a.m., Defendant drove a tan, 1993 Lexus S300 bearing California license plate number “6BCM522" into the vehicle primary lanes at the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. The United States Customs and Border Protection Officer Renner was working the primary inspection lane when Defendant approached in the vehicle. Defendant said he was a United States citizen and presented a valid U.S. Passport. Officer Renner noticed that the license plate appeared new. Defendant stated that he was not bringing anything back from Mexico. Defendant told Officer Renner that he owned the vehicle and that he purchased it 10 days ago. However, when Defendant’s hands were shaking as he handed the vehicle’s registration to Officer Renner. The title, which was dated November 18, 2007, showed that the vehicle was actually owned by “Francisco Aguilar,” not Defendant. Defendant told Officer Renner that he lived in Tijuana, Mexico. Officer Renner swiped Defendant’s passport and the computer-check indicated that Defendant had previously smuggled narcotics into the United States. Officer Renner referred the vehicle to the secondary inspection area.

In the secondary inspection area, Officer Boutwell received another negative declaration from Defendant. Canine Enforcement Officer Beyke screened the vehicle with her narcotics detector dog. The dog positively alerted to the driver’s side quarter panel. A further inspection of the vehicle by Officer Becerra revealed two packages in the engine compartment. The packages contained a green, leafy substance that field-tested positive for marijuana. Defendant was arrested and escorted to the security office. The two packages of marijuana weighed approximately 2.32 kilograms. Defendant was arrested and escorted to the security office.

At approximately 2:20 p.m., Officer Moore screened the vehicle again with his narcotics detector dog. The dog positively alerted to the driver’s side dashboard area. Officer Moore searched underneath

the dashboard and saw an additional package wrapped in gray tape. Officer Becerra seized the package, which contained a green, leafy substance that tested positive for marijuana. The one package of marijuana weighed approximately 1.62 kilograms. As such, the three packages seized from the vehicle weighed a total of 3.94 kilograms (or 8.67 pounds).

**2. Post-Miranda Statement**

At approximately 9:45 a.m., on December 4, 2007, ICE agents advised Defendant was of his Miranda rights. Defendant acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant denied knowledge of the drugs in the vehicle, and told agents that he was on his way to San Felipe, Mexico when his vehicle broke down in Tijuana. Even though Defendant told agents that he was a mechanic, Defendant claimed that he had another mechanic in Mexico look at the vehicle. He believes this Mexican mechanic's name is also "Aurelio" and he must have put the drugs in the vehicle. Defendant said he lives in San Fernando. Defendant then changed his story about going to San Felipe, Mexico, and told agents that he traveled to Tijuana, Mexico, to visit his daughter. However, Defendant had told agents earlier that his daughter lived in Jalisco, Mexico, and not Tijuana. Defendant next claimed that he was on his way to Chula Vista courthouse to deal with a traffic violation.

After making the several inconsistent statements above, Defendant told agents that he purchased the Lexus two weeks ago in San Fernando, Mexico, for $3,000 from a person he knew as "Pancho," who Defendant also claimed was the registered owner, "Francisco Aguilar."

Toward the end of the interview, Defendant asked agents what benefit he would received if he were to tell them something different than what he already stated. The interview concluded.

**C. DEFENDANT'S CRIMINAL HISTORY**

Defendant is a repeat drug smuggling offender. On February 20, 1998, Defendant pled guilty and was convicted, in the United States District Court for the Southern District of Texas, of possession with the intent to distribute less than 1 kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1), and received a sentence of 37-months prison and 3 years probation. The United States has produced these conviction documents to Defendant.

/ /

## III

## THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A. MOTION TO COMPEL DISCOVERY

As of the date of this Motion, the United States has produced 297 pages of discovery. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received no reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

#### 1, 2, 6, 7. *Brady* Material

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the United States need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

#### 1, 5. Defendant's Statements And Arrest Reports

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United

States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

The United States also objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra Part III.A.12.; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

**2, 4, 8. Evidence Seized and Tangible Objects**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 3. Defendant's Prior Record and Any 404(b) or 609 Evidence

The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

The United States has complied and will continue to comply with its obligations under Federal Rules of Evidence 404(b) and 609. The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Federal Rules of Evidence 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

### 6. Personnel Records, *Henthorn* and *Giglio* Evidence

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review the personnel files.

/ /

Defendant has not cited any authority that requires the United States to produce "complaints of assaults, abuse of discretion and authority and/or false arrest." [Def Motion at 4.] The case cited by Defendant, Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by statute. See Fagan v. Superior Court, 111 Cal. App.4th 607 (2003). Moreover, Pitchess involved a criminal case in which a defendant who claimed to have acted in self-defense sought evidence as to the police officers' use of force on previous occasions. Pitchess, 11 Cal. 3d at 534, 535. Pitchess is simply inapplicable to Defendant's case.

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

**9, 17, 18. Witness Addresses and Names of Witnesses Favorable to the Defendant**

The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him. The names of these individuals have already been provided to Defendant.

**10, 20. Statements Relevant to the Defense**

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. In fact, the Ninth Circuit, interpreting Fed. R. Crim. P. 16, held: "We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." See United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982), overruled on

other grounds by Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1499 (1988) (emphasis added). Therefore, the United States will only disclose relevant statements made by Defendant pursuant to this request.

**11. Reports of Scientific Tests or Examinations**

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

**12, 13. Agreements Informants/Cooperating Witnesses**

Defendant incorrectly asserts that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

As previously stated, the United States will provide Defendants with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986). Defendants, however, are not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). Defendants have already received access to the names of potential witnesses in this case in the investigative reports previously provided.

**14. Character Evidence under 608(b)**

The United States objects to Defendant's broad request for "any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction"as

overbroad and not required by any discovery rule or Ninth Circuit precedent. Defendant reliance on Federal Rule of Evidence 608(b) and Brady in making this request is misplaced. The United States requests that the Court address any evidentiary issues under Rule 608(b) at the motions in limine hearing that will be set prior to trial.

In the meantime, the United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

**15. Evidence of Criminal Investigation of Any United States' Witness**

The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

/ /

**16. Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / Bias or Motive to Lie / Impeachment Evidence**

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

**21. Witnesses (Including Experts)**

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced. In addition, the United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that\ the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

**22. Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

**B. DISMISS INDICTMENT DUE TO A SPEEDY TRIAL ACT VIOLATION**

Defendant, relying on provisions of the Speedy Trial Act set forth at Title 18, United States Code, Sections 3161 and 3162, contends that the indictment returned by the federal grand jury on January 16, 2008, must be dismissed as a result of the United States' failure to indict him within thirty days of his arrest on December 5, 2007. This argument is meritless.

**1. There Is No Speedy Trial Act Violation**

Title 18, United States Code, Section 3161(b) provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. . . .

"A criminal complaint is not an essential element in the criminal proceeding; an indictment may be returned without a prior charge in a criminal complaint." United States v. Perez-Reveles, 715 F.2d 1348, 1354 (9th Cir. 1983). "Thus the dismissal of the charge in the criminal complaint does not have the same effect as the dismissal of the indictment." Id. When the United States dismisses a complaint and later files a subsequent complaint or an indictment, section 3161(d)(1) governs the relevant time period. See United States v. McCown, 711 F.2d 1441, 1446 (9th Cir. 1983); see also United States v. Krynicki, 689 F.2d 289, 292 (1st Cir. 1982); United States v. Peters, 587 F.2d 1267, 1273 (D.C. Cir. 1978). Section 3161(d)(1) provides in part:

> If. . .any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an

> offense based on the same conduct or arising from the same criminal episode,. . .the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint. . . .

Defendant is mistaken with respect to the effect of the United States' dismissal of the initial complaint. It is well-settled that "when the government drops a *complaint* but then later brings a *new complaint* on the same charge, the 30-day period runs from the *second complaint* or indictment." United States v. Williams, 408 F.3d 1073, 1076 (8th Cir. 2005) (quoting United States v. Long, 900 F.2d 1270, 1273 (8th Cir. 1990)) (emphasis added). This is a well-settled rule in other circuits as well. See, e.g., United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004) (if charges are dismissed before expiration of the thirty-day filing period, there is no bar to their being resurrected in a new complaint or indictment); United States v. Thomas, 705 F.2d 709-11 (4th Cir. 1983) (new prosecution not subject to dismissal based on failure to comply with time limits imposed in original prosecution); United States v. Hutchins, 818 F.2d 322, 325-26 (5th Cir. 1987) (holding that the return of a second indictment about fifty days after initial dismissal of the first indictment did not violate the thirty-day rule even though the charges were based on the same criminal conduct); United States v. May, 771 F.2d 980, 982-83 (6th Cir. 1985) (holding that time period begins to run anew from issuing of new indictment); United States v. Samples, 713 F.2d 298, 302-03 (7th Cir. 1983) (while the language of Speedy Trial Act is ambiguous as to whether the original arrest or an arrest made in connection with the subsequent indictment controlled, the legislative history of the act makes reference to allowing the time limits imposed in subsections 3161(b) and (c) to run afresh; thus it must follow that the original arrest is not the starting point to measure whether the subsequent indictment is timely); United States v. Puett, 735 F.2d 1331, 1333-34 (11th Cir. 1984) (holding that thirty-day time period began anew after dismissal of first complaint); United States v. Bittle, 699 F.2d 1201, 1205-06 (D.C. Cir. 1983).

The rationale behind this well-settled rule is that a contrary interpretation would render section 3161(d)(1) superfluous because section 3161(b) already places a thirty-day limit on the period between arrest or issuance of summons and indictment. Were the Court to read section 3161(d)(1), as Defendant maintains, section 3161(b) alone would be sufficient to require dismissal of an indictment returned more than thirty days after the filing of a previously dismissed complaint. Congress drafted section 3161(d)(1) precisely to preclude such an interpretation:

> [Section 3161(d)(1)] allows latitude to the prosecutor to re-institute prosecution of a criminal defendant whose case has previously been dismissed on non-speedy trial grounds without having to comply with the time limits imposed by the filing of the earlier complaint. To require a prosecutor to conform to indictment and trial time limits which were set by the filing of the original complaint in order to reopen a case on the basis of new evidence would be an insurmountable burden. Thus, when subsequent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint.

S.Rep. No. 93-1021, 93d Cong., 2d Sess. 33 (1974), reprinted in A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, 78-89 (1980); see also McCown, 711 F.2d at 1446 (9th Cir. 1983) ("We are convinced that this is a correct interpretation of the statute, particularly in light of the legislative history."). This construction of section 3161(d) is also consistent with the traditional view that speedy trial guarantees focus only on *pending* criminal prosecutions. See Pruett, 735 F.2d at 1334 (emphasis in original). Therefore, "the time between the arrest and the dismissal of the first complaint is not counted, nor is the time between the dismissal and the second [or subsequent] indictment [or complaint]." Williams, 408 F.3d at 1076.

Defendant's reliance on Palomba[1] and Pollock[2] is misplaced because these decisions turn on factual distinctions that are not present in the instant case.

In Palomba, the Court found defense counsel ineffective for failing to move to dismiss counts charged in the complaint, omitted from the original indictment, and then charged in the superseding indictment approximately three months later. Id. There, the defendant was charged by complaint with making false statements to a federal agency, mail fraud, and conspiracy, in violation of 18 U.S.C. §§ 1001, 1341, and 371. See id. at 1459. Ten days later, a grand jury returned an indictment charging one count of conspiracy to defraud the United States and one count of making false statements to a federal agency in violation of 18 U.S.C. §§ 371 and 1001. The original indictment did not include the mail fraud allegations that appeared in the complaint. See id. A few months later, a superseding indictment was returned that included the two counts of mail fraud in violation of section 1341. See id. at 1460. Thus, the superseding indictment in Palomba charged the mail fraud violations under section 1341 that were included in the complaint, but omitted in the first indictment.

---

[1] United States v. Palomba, 31 F.3d 1456 (9th Cir. 1994).

[2] United States v. Pollock, 726 F.2d 1456 (9th Cir. 1984).

The Ninth Circuit in Palomba held that while "the Government may prosecute a defendant accused in a complaint and untimely charged in a subsequent indictment when the respective offenses are punishable under different statutes, despite the fact that they arose from the same criminal transaction" id. at 1464 (citations omitted), it follows that "where, as here, the charges in the complaint and a later [untimely] indictment are brought under the same statute, such charges shall be dismissed under Section 3161(b) . . . ." Id. The Ninth Circuit recognized that had the government alleged the mail fraud counts in the original indictment, there would have been no violation of the Act: "In short, the superseding indictment charged Palomba in an untimely manner with an offense which was contained in the complaint but which was not preserved against Section 3162(a)(1) dismissal either by such facial factual differences or by inclusion in the timely original indictment." Id.

In Pollock, the Government filed a complaint against the defendant. The Government obtained an extension of the thirty-day limit because of problems with witnesses it had subpoenaed to appear before the grand jury. The Court held that the extension of the thirty-day limit appeared to be the result of negligence or inadvertence. Pollock, 726 F.2d at 1462. Thus, the Court dismissed the indictment because the Government *exceeded* the thirty-day time limit. Id.

Here, Defendant fails to understand the key distinction between his case and the cases he relies upon in his motion to dismiss. Palomba addressed the situation where the United States obtained a superseding indictment a few months after it had obtained an indictment and the defendant claimed the charges in the superseding indictment were brought *after* the initial thirty-day period expires. Pollock addressed the situation where the United States had *exceeded* the initial thirty-day time limit before obtaining the indictment. However, the instant case does not address a superseding indictment and does not address the situation where the initial thirty-day period expired. Rather, in the instant case, the Court, upon motion by the United States, dismissed, without prejudice, the first complaint *before* the thirty-day time limit had expired. Shortly thereafter, the United States filed the *second complaint*. The United States did not *exceed* the initial thirty-day time limit on the first complaint, and therefore, section 3161(d) applies. As such, in applying the well-settled rule above, the time between Defendant's arrest on December 5, 2007 and dismissal of the first complaint on January 3, 2008 is not counted. The thirty-day time limit began to run on the filing of the second complaint on January 3, 2008. The grand jury

returned an indictment on January 16, 2008, which is well-within the thirty-day limit, and therefore, the indictment should **not** be dismissed. The Court should deny Defendant's motion to dismiss the indictment.

**2. Counts 3 and 4 of the Indictment Should Not Be Dismissed**

Defendant misunderstands the application of sections 3161(d) and 3162(a)(1). In the instant case, there is no need to perform the three-factor analysis under 3162(a)(1) and United States v. Taylor, 487 U.S. 326 (1988), because section 3161(d) applies, not 3162(a)(1), since the first complaint was dismissed *before* the thirty-day period expired, **and**, it was dismissed *without prejudice.*

In order to determine whether to apply section 3161(d) or 3162(a)(1), the Court must first determine when the original complaint was dismissed. If the original complaint had been dismissed on the Government's motion *before* the thirty-day period expired, the time for bringing an indictment would have been reset under section 3161(d)(1). United States v. Bergouignan, 764 F.2d 1503, 1507 (11th Cir. 1985). On the other hand, if the first complaint was dismissed *after* the time for bringing an indictment in 1981 had expired, section 3162(a)(1) would have been triggered. Id. The Court would then have to determine whether the dismissal of the first complaint was with or without prejudice, taking into consideration the factors enumerated in section 3162(a)(1). Id.; see also United States v. Dorman, 752 F.2d 595, 596-98 (11th Cir. 1985); United States v. Bittle, 699 F.2d 1201, 1207 (D.C. Cir. 1983). The factors are: (1) seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of this chapter and on the administration of justice. See 18 U.S.C. § 3162(a)(1). The instant case is similar to Dorman because the Court dismissed the original complaint, without prejudice, *before* the thirty-day period expired. Thus, the Court need not perform the analysis of the factors set forth in 3162(a)(1).

In Dorman, the defendant was arrested in Nebraska on December 8, 1982 and a complaint was filed in Nebraska on December 9, 1982. On January 10, 1983, a complaint was filed in Florida against the defendant. On January 11, 1983, the Government dismissed the complaint filed in Nebraska in light of the complaint filed in Florida. On January 13, 1983, the grand jury in Florida returned an indictment against the defendant. The defendant moved to dismiss the indictment claiming that it was not obtained within the thirty-day time limit set forth in section 3161(b). The Court denied the defendant's motion

to dismiss the indictment in Florida because the timeliness of the Florida indictment was not measured from the date of the Nebraska arrest since the complaint underlying that arrest was no longer pending at the time of the indictment. Dorman, 752 F.2d at 597. The Court held that after the Nebraska complaint was dismissed, which was prior to the expiration of the thirty-day time limit, the Government would have had at least another thirty days under section 3161(d)(1) to indict the defendant, "unless the dismissal of the Nebraska complaint should have been with prejudice," in which case, the charges in the Florida case would have been precluded. Id.

Here, the United States dismissed the first complaint *before* the thirty-day period expired. The magistrate judge ordered the first complaint be dismissed *without prejudice*. Therefore, under the holdings in Dorman and Bergouignan, and pursuant to section 3161(d), the thirty-day time limit is measured not from the first complaint but rather from the filing of the second complaint - which was January 3, 2008. Since the United States obtained the indictment thirteen days later on January 16, 2008, which was well-within the thirty-day time limit, the United States did not violate Defendant's due process rights. As such, the United States did not violate the Speedy Trial Act, and therefore, the Court should deny Defendant's motion to dismiss the indictment.

**C. DISMISS INDICTMENT DUE TO VINDICTIVE PROSECUTION**

A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217 (9th Cir. 2001); United States v. Gastelum-Almeida, 298 F.3d 1167 (9th Cir. 2002). To establish a claim of vindictive prosecution, the defendant must make an initial showing that charges were added because the accused exercised a statutory, procedural, or constitutional right. See United States v. Garza-Juarez, 992 F.2d 896, 906 (9th Cir. 1993).

Defendant's reliance on Blackledge v. Perry, 417 U.S. 21 (1974), is distinguishable from the facts of the instant case. In Blackledge, the Supreme Court held that the Due Process Clause prohibits a prosecutor from bringing a more serious charge against a defendant who has pursued a statutory right of appeal from a conviction on a lesser charge for the same offense. Id. at 28-29 (prosecutor charged defendant with a felony after defendant exercised his right to appeal a trial *de novo* following his

conviction on a misdemeanor). Although the defendant in Blackledge did not show actual vindictiveness on the part of the prosecutor, the Court held that due process is offended by those possibilities of increased punishment that pose a "realistic likelihood of 'vindictiveness."' Id. at 27. The facts in Blackledge are distinguishable from this case because this case involves pretrial proceedings. As such, the holding in Blackledge and the other cases cited by Defendant are inapplicable.

A presumption of vindictiveness can be overcome by objective evidence that the prosecution was proper. See Garza-Juarez, 992 F.2d at 907-08 (presumption of vindictiveness rebutted by evidence that superseding indictment resulted from failure of plea bargaining process). "Vindictiveness claims are, however, evaluated differently when the additional charges are added during pretrial proceedings, particularly when plea negotiations are ongoing, than when they are added during or after trial." United States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000). In the context of pretrial negotiations, "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." Id. "The prosecutorial practice of threatening a defendant with increased charges if he does not plead guilty, and following through on that threat if the defendant insists on his right to stand trial," Alabama v. Smith, 490 U.S. 794, 802 (1989), does not create a presumption of vindictive prosecution. See United States v. Goodwin, 457 U.S. 368, 378-81 (1982); Corbitt v. New Jersey, 439 U.S. 212 (1978); United States v. Heldt, 745 F.2d 1275, 1280-81 (9th Cir. 1984). Even assuming the United States did seek to obtain an indictment with additional charges in retaliation for Defendant's refusal to plead guilty, that alone is insufficient to establish vindictive prosecution. United States v. Stewart, 770 F.2d 825, 829 (9th Cir.1985) (citing Heldt, 745 F.2d at 1280), cert. denied, 474 U.S. 1103 (1986); United States v. Allsup, 573 F.2d 1141, 1143 (9th Cir.), cert. denied, 436 U.S. 961 (1978) (holding that bringing additional charges because the defendant was not willing to plea bargain was permissible prosecutorial discretion).

In this case, the parties began negotiating a pre-indictment fast-track plea bargain on or about December 18, 2007, when the Assistant U.S. Attorney send the plea package, which included an information, plea agreement, plea letter, and acceptance of plea form. The Assistant U.S. Attorney and defense counsel spoke via telephone on December 18, 2007, at which time, the Assistant U.S. Attorney verbally conveyed the plea offer and informed defense counsel that the plea package and the discovery

would be sent out that day. On December 23, 2007, defense counsel faxed Defendant's acceptance of the pre-indictment fast-track offer.[3] On January 2, 2008, at approximately 4:45 p.m., Defendant retracted his acceptance of the offer and informed the United States that he would not waive indictment on January 3, 2008. On January 3, 2008, the United States argued that it had detrimentally relied on Defendant's acceptance and did not obtain an indictment against Defendant because defense counsel, while knowing about the retraction earlier in the day, waited until the end of the day, when the grand jury had been dismissed, to inform the United States of the retraction. Therefore, the United States moved to dismiss the first complaint, without prejudice, and thereafter, filed a second complaint. On January 16, 2008, the grand jury returned an indictment against Defendant, which included the crimes committed by Defendant in 2005, which is within the five-year statute of limitations.[4]

The facts here are similar to those before the Court in Allsup, Heldt and Gastelum-Almeida, where the defendant claimed vindictive prosecution during the pretrial context when the prosecutor sought the addition of new charges following the defendant's rejection of the prosecutor's plea offer. Allsup, 573 F.2d at 1143; Heldt, 745 F.2d at 1281-82; Gastelum-Almeida, 298 F.3d at 1172. The Ninth Circuit rejected the vindictive prosecution claim and observed that the addition of new charges in the pretrial context is a common occurrence in plea negotiations, and involves nothing improper. Allsup, 573 F.2d at 1143; Heldt, 745 F.2d at 1281-82; Gastelum-Almeida, 298 F.3d at 1172.

---

[3] Defendant's assertion that he changed his mind because of the discrepancy in the quantity of marijuana provided in the pre-indictment discovery materials is ludicrous. First, the pre-indictment offer form signed by defense counsel clearly indicated that Defendant would pled guilty to importing 3.94 kilograms of marijuana. Second, all of the materials in the pre-indictment plea package (e.g., plea agreement, plea letter, information, and acceptance form) indicated that the amount of marijuana that Defendant would pled guilty to importing was 3.94 kilograms. Third, whether the amount of marijuana was 2.32 kilograms or 3.94 kilograms, the pre-indictment fast-track offer would have been the same because the defendant's guideline range would not have materially changed, if at all. Finally, at 4:45 p.m. on January 2, 2008, the day before Defendant was to waive indictment and after the grand jury had been dismissed for the day, defense counsel advised the Assistant U.S. Attorney that she met with her client earlier that morning and he was not accepting the pre-indictment offer because he did not want to waive indictment. Defense counsel did not mention that Defendant was rejecting the offer because of some discrepancy in the amount of marijuana in the discovery materials. In fact, defense counsel sought to have Defendant sentenced without a pre-sentence report, and the Assistant U.S. Attorney rejected this contention and insisted that the pre-indictment offer require that the parties obtain a pre-sentence report (as specified in the plea agreement).

[4] After Defendant retracted his acceptance of the pre-indictment fast-track offer, the Assistant U.S. Attorney, upon further investigation and review of the case files (including an assessment of the evidence) from 2005, added the crimes committed in 2005 to its proposed indictment, which was presented to the grand jury on January 16, 2008. The Assistant U.S. Attorney swears that there was no vindictiveness in adding these additional charges.

Defendant presents no authority even suggesting that the United States' pursuit of the maximum legal sentence may be seen as vindictive prosecution, much less that such an act would be an inappropriate response to failure to reach a plea bargain. Defendant was aware of the risk he was taking in refusing the plea offer made in this case. His rejection of the plea offer was freely and voluntarily made. As such, there can be no constitutional violation. Thus, the Court should deny Defendant's motion to dismiss the indictment.

### D. MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED

Defendant moves to suppress statements and requests that the United States prove that all statements were voluntarily made, and made after a knowing and intelligent Miranda waiver. Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary. Defendant's motion to suppress statements should be denied without an evidentiary hearing because he failed to allege a specific factual dispute, and failed to support his contentions with a sworn declaration as required by Crim LR 47.1(g). As explained further below, the Government does not believe that a suppression hearing is necessary to prove admissibility; however, if the Court chooses to hold an evidentiary hearing on Defendant's Motion, the United States will prove that Defendant's statements were voluntary, Defendant was not subject to custodial interrogation, and the statements are, therefore, admissible.[5]

#### 1. Knowing, Intelligent, and Voluntary Miranda Waiver

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of Miranda rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

A valid Miranda waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979). To

---

[5] Defendant does not argue that any pre-arrest statements made by him should be suppressed, which they should not be because Defendant was not in custody at that time. See Miranda, 384 U.S. 436 (holding that under the Fourth Amendment a person must be advised of his rights prior to questioning after custodial arrest); United States v. Butler, 249 F.3d 1098 (9th Cir. 2001) ("The sine qua non of Miranda is custody.").

be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373. In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of the circumstances surrounding the interrogations. See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents), (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession. See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally not required unless an "appreciable time" elapses between interrogations. See United States v. Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

Here, the ICE agents, on both occasions in 2005 and 2007, scrupulously honored the letter and spirit of Miranda in carefully advising Defendant of his Miranda rights prior to any post-arrest custodial interrogation. Defendant was advised of his Miranda rights, both orally and in writing, before the interrogation. Defendant orally agreed to waive his Miranda rights and signed a Miranda waiver form. Defendant also initialed next to each Miranda right on the advice of rights form. Based on the totality of the circumstances, Defendant's statements should not be suppressed because his Miranda waiver was knowing, intelligent, and voluntary.

/ /

**2. Defendant's Statements Were Voluntary**

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.1990). Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070, 1074(9th Cir. 1998)(en banc).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, _ U.S. _, 124 S. Ct. 446 (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b). United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See Andaverde, 64 F.3d at 1313.

As discussed above, Defendant was read his Miranda rights and was provided with a written advice of rights and Miranda waiver form prior to his post-arrest interview. Defendant explicitly stated that he understood his Miranda rights and agreed to waive those rights. See United States v. Gamez,

301 F.3d 1138, 1144 (9th Cir. 2002). Defendant's statements were not the product of physical intimidation or psychological pressure of any kind by any government agent. There is no evidence that Defendant's will was overborne at the time of his statements. Consequently, Defendant's motion to suppress his statements as involuntarily given should be denied.

**3. Defendant's Motion Should Be Denied Without An Evidentiary Hearing**

This Court can and should deny (without prejudice) Defendant's motion to suppress statements without an evidentiary hearing because Defendant failed to (1) allege a specific factual dispute, and (2) provide a sworn declaration in support of his motion to suppress.

**a. Defendant Failed To Allege a Specific Factual Dispute**

An evidentiary hearing is required if a defendant's motion to suppress and supporting declarations or affidavits fail to allege a specific factual dispute. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at issue"). Where a defendant fails to provide a specific factual dispute of any material fact, the Court is not required to hold an evidentiary hearing. See United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (finding that the motion to suppress was "akin to boilerplate motions that lay no factual foundation" and that the unsworn representations of counsel were "too indefinite and conjectural to require the government to respond"); United States v. Feola, 651 F. Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d 857 (2d Cir. 1989) (denying motion for Miranda hearing to determine admissibility of confession where there was "no real allegation of [] police coercion").

Defendant failed to specifically identify the statements that he seeks to suppress or allege any specific factual or legal dispute regarding the admissibility of the statements. Defendant did not allege that the ICE agents failed to advise Defendant of his Miranda rights, that the Miranda rights provided

were somehow defective, that his Miranda waivers were not knowingly, intelligently, or voluntarily made, or that the statements were involuntarily coerced by ICE agents or other Government agents. In essence, Defendant's motion to suppress is pure boilerplate and lacks sufficient definiteness, clarity, and specificity to enable the Court to rule on the motion or allow the Government to prepare for any motion to suppress statements.

**2. Defendant Failed To Provide A Sworn Declaration**

This Court can and should deny Defendant's Motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in this case. Cf. United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted).

Defendant does not dispute that no custodial interrogation occurred after Defendant invoked his right to silence. Defendant does not allege coercion, threats, or promises induced him to make his statements. Defendant does not allege that law enforcement officers violated his constitutional rights by continuing to question him after he invoked. Defendant's argument is that, because he made

statements after he invoked, he is entitled to an evidentiary hearing. But Defendant does not allege that any form of interrogation occurred. "The fundamental import of the privilege while an individual is in custody is . . .whether he can be interrogated . . .Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." Miranda, 384 U.S. at 478. Without interrogation, there can be no Miranda violation, and a voluntary statement is admissible. See Medeiros v. Shimoda, 889 F.2d 819, 825 (9th Cir. 1989); see also Batiste, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

For all the reasons above, the Court should deny Defendant's motion to suppress statements.

**E. PRESERVE, RE-WEIGH, INSPECT AND PHOTOGRAPH EVIDENCE**

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence. The United States does not oppose Defendant's request to inspect the vehicle driven by Defendant in the 2007 offense and the marijuana seized from the vehicle in the 2007 offense. However, due to the lapse of time from the offense that occurred in 2005, the vehicle and marijuana evidence is no longer available for inspection.

**F. LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Compel Discovery, Preserve Evidence and Leave to File Further Motions, unless unopposed.

DATED: February 22, 2008.

Respectfully submitted,

KARAN P. HEWITT
United States Attorney

/s/ Joseph J.M. Orabona
JOSEPH J.M. ORABONA
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AURELIO LUNA-SANCHEZ,<br>Defendant. | Criminal Case No. 08CR0141-JM<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE AND GRANT LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Sylvia Baiz
Law Office of Sylvia Baiz
964 Fifth Avenue, Suite 214
San Diego, California 92101
*Lead Attorney for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2008.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney