KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AURELIO LUNA-SANCHEZ,<br>Defendant. | Criminal Case No. 08CR0141-JM<br>Date: May 9, 2008<br>Time: 1:30 p.m.<br>The Honorable Jeffrey T. Miller<br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS IN LIMINE** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Motions In Limine in the above-referenced case to (1) Exclude All Witnesses Except The Case Agent; (2) Admit Expert Testimony; (3) Admit Demeanor Evidence; (4) Admit 404(b) Evidence; (5) Admit 609 Evidence; (6) Limit Character Evidence; (7) Preclude Expert Testimony By Defense; (8) Preclude Evidence of Duress and Necessity; (9) Prohibit Reference to Defendant's Health, Finances, Education and Potential Punishment; (10) Prohibit Self-Serving Hearsay; and (11) Renewed Motion For Reciprocal Discovery. These motions in limine are based on the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On January 16, 2008, a federal grand jury in the Southern District of California returned a four-count indictment against Defendant AURELIO LUNA-SANCHEZ ("Defendant"). The Indictment charges Defendant with one count of importing approximately 29.25 kilograms (64.35 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, one count of possessing approximately 29.25 kilograms (64.35 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), one count of importing approximately 3.94 kilograms (8.67 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, and one count of possessing approximately 3.94 kilograms (8.67 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On January 17, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty. On February 15, 2008, Defendant filed his discovery motions and motions to suppress statements and dismiss the Indictment. On March 28, 2008, the Court denied Defendant's motions to dismiss the Indictment due to an alleged violation of the Speedy Trial Act and due to alleged vindictive prosecution. On May 6, 2008, the Court will hear all motions, including motions in limine. The trial is set for May 12, 2008 at 9:00 a.m. As such, the United States files this memorandum of points and authorities in support of the following motions in limine.

## II

## STATEMENT OF FACTS

### A. OFFENSE CONDUCT IN 2005

#### 1. Events Leading to Seizure of Marijuana

On September 12, 2005, at approximately 12:36 a.m., Defendant drove a green, 1994 Jeep Grand Cherokee bearing California license plate number "5PCM316" into the vehicle primary lanes at the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. Defendant and the car were referred to the secondary inspection area.

In the secondary inspection area, Officer Cisneros was on duty at approximately 12:40 a.m., when Defendant drove the green 1994 Jeep Grand Cherokee into the lot. Officer Cisneros notified Canine Enforcement Officer Corvino to inspect the vehicle utilizing her narcotics detector dog. The dog alerted to the spare tire of the vehicle. Officer Corvino notified Officer Cisneros of the alert, and Officer

Cisneros escorted Defendant to the security office. A search of the spare tire revealed eight packages containing a green leafy substance, which field-tested positive for marijuana. Officer Cisneros called American Towing to have a certified mechanic remove the gas tank. Thereafter, the gas tank was removed from the vehicle, and a subsequent search revealed twenty-four packages of a green leafy substance, which field-tested positive for marijuana. The thirty-two packages of marijuana weighed a total of 29.25 kilograms. Although the gas tank had six gallons of gas in it, the gas gauge read empty.

Defendant was arrested. Defendant had $1,023 in his possession. The only clothes found in the vehicle was a plaid shirt, a pair of blue jeans, and a pair of tennis shoes.

Gildardo Carillo is the registered owner of the vehicle driven by Defendant. Carillo was arrested on June 9, 2005 for smuggling 54.80 kilograms of marijuana into the United States. He was sentenced to 121 days in San Diego County Jail. Carillo was in custody on the date of Defendant's arrest.

**2. Post-Miranda Statement**

At approximately 4:00 a.m., on September 12, 2005, United States Immigration and Customs Enforcement (ICE) agents advised Defendant was of his Miranda rights. Defendant acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant told agents that he had recently moved from Sylmar, California to Sun Valley, California, but could not remember his address. He stated that he placed all of his belongings in storage and traveled to Michoacan, Mexico. He claimed that he left for Mexico on the first or second of September and returned to the United States on September 10. Defendant stated that he sold a Jeep Wrangler in Michoacan for $3,500. He then returned to the United States on September 10 and returned to Tijuana, Mexico, the next day driving his Volkswagen Golf. Defendant left the Volkswagen Golf in Mexico to test drive the 1994 Jeep Grand Cherokee.

Defendant indicated that he was driving to Sun Valley with the Jeep Grand Cherokee and if he liked it, he was going to purchase it for $2,700. Defendant claimed that the Boost mobile phone in his possession was from the company he worked for - AVM Woodworking in Van Nuys, California. Defendant stated that this company paid for the Boost mobile phone.

/ /

/ /

**B. OFFENSE CONDUCT IN 2007**

**1. Events Leading to Seizure of Marijuana**

On December 4, 2007, at approximately 5:30 a.m., Defendant drove a tan, 1993 Lexus S300 bearing California license plate number “6BCM522" into the vehicle primary lanes at the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. The United States Customs and Border Protection Officer Renner was working the primary inspection lane when Defendant approached in the vehicle. Defendant said he was a United States citizen and presented a valid U.S. Passport. Officer Renner noticed that the license plate appeared new. Defendant stated that he was not bringing anything back from Mexico. Defendant told Officer Renner that he owned the vehicle and that he purchased it 10 days ago. However, when Defendant’s hands were shaking as he handed the vehicle’s registration to Officer Renner. The title, which was dated November 18, 2007, showed that the vehicle was actually owned by “Francisco Aguilar,” not Defendant. Defendant told Officer Renner that he lived in Tijuana, Mexico. Officer Renner swiped Defendant’s passport and the computer-check indicated that Defendant had previously smuggled narcotics into the United States. Officer Renner referred the vehicle to the secondary inspection area.

In the secondary inspection area, Officer Boutwell received another negative declaration from Defendant. Canine Enforcement Officer Beyke screened the vehicle with her narcotics detector dog. The dog positively alerted to the driver’s side quarter panel. A further inspection of the vehicle by Officer Becerra revealed two packages in the engine compartment. The packages contained a green, leafy substance that field-tested positive for marijuana. Defendant was arrested and escorted to the security office. The two packages of marijuana weighed approximately 2.32 kilograms. Defendant was arrested and escorted to the security office.

At approximately 2:20 p.m., Officer Moore screened the vehicle again with his narcotics detector dog. The dog positively alerted to the driver’s side dashboard area. Officer Moore searched underneath the dashboard and saw an additional package wrapped in gray tape. Officer Becerra seized the package, which contained a green, leafy substance that tested positive for marijuana. The one package of marijuana weighed approximately 1.62 kilograms. As such, the three packages seized from the vehicle weighed a total of 3.94 kilograms (or 8.67 pounds).

/ /

**2. Post-Miranda Statement**

At approximately 9:45 a.m., on December 4, 2007, ICE agents advised Defendant was of his Miranda rights. Defendant acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant denied knowledge of the drugs in the vehicle, and told agents that he was on his way to San Felipe, Mexico when his vehicle broke down in Tijuana. Even though Defendant told agents that he was a mechanic, Defendant claimed that he had another mechanic in Mexico look at the vehicle. He believes this Mexican mechanic's name is also "Aurelio" and he must have put the drugs in the vehicle. Defendant said he lives in San Fernando. Defendant then changed his story about going to San Felipe, Mexico, and told agents that he traveled to Tijuana, Mexico, to visit his daughter. However, Defendant had told agents earlier that his daughter lived in Jalisco, Mexico, and not Tijuana. Defendant next claimed that he was on his way to Chula Vista courthouse to deal with a traffic violation.

After making the several inconsistent statements above, Defendant told agents that he purchased the Lexus two weeks ago in San Fernando, Mexico, for $3,000 from a person he knew as "Pancho," who Defendant also claimed was the registered owner, "Francisco Aguilar."

Toward the end of the interview, Defendant asked agents what benefit he would received if he were to tell them something different than what he already stated. The interview concluded.

**C. DEFENDANT'S CRIMINAL HISTORY**

Defendant is a repeat drug offender. On February 20, 1998, Defendant pled guilty and was convicted, in the United States District Court for the Southern District of Texas, of possession with the intent to distribute less than 1 kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1), and received a sentence of 37-months prison and 3 years probation.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## III

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT

"[A] person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. Fed. R. Evid. 615. Here, the case agent has been critical to the investigation and is considered by the United States to be an integral part of the trial team. Unless the Defendant can make a similar showing as to any of its witnesses, the United States requests that Defendant's testifying witnesses be excluded during trial.

### B. THE COURT SHOULD ADMIT EXPERT TESTIMONY BY UNITED STATES

#### 1. Introduction

The United States moves this Court to admit expert testimony regarding the modus operandi of drug couriers and the value of the marijuana involved in this case. In addition, absent a stipulation by Defendants, the United States moves this Court to admit expert testimony regarding the drugs seized from the Defendant's vehicle. The United States intends to call a Special Agent with the United States Immigration and Customs Enforcement as an expert in narcotics trafficking, the value of illicit narcotics, the modus operandi of drug couriers, and the distributable quantities of marijuana. Additionally, the United States will call a forensic chemist from the Drug Enforcement Administration as an expert in identifying marijuana. The Court should admit such testimony as relevant and reliable.

#### 2. Standard of Admissibility

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial, and has "broad latitude" in determining the relevance and reliability of such testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999). Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The district court may consider the Daubert test or any other factors in addressing relevant reliability concerns regarding expert testimony.

Kumho, 526 U.S. at 149-50 (noting that "there are many different kinds of experts, and many different kinds of expertise," including, "experts in drug terms, handwriting analysis, criminal modus operandi").

The expert's opinion may be based on hearsay or facts not in evidence when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; see, e.g., United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating "[w]e have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi.") (internal quotations omitted); see also United States v. Hankey, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that gang members would be subject to violent retribution if they testified against another gang member).

An expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704; United States v. Plunk, 153 F.3d 1011, 1018 (9th Cir. 1998). An experienced narcotics agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue. United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976). The proposed expert testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).

**3. Evidence Regarding Modus Operandi of Drug Couriers**

The United States moves to present expert testimony regarding the modus operandi of drug-couriers, if Defendant attempts to introduce any of those categories of evidence during opening statement, cross-examination, or Defendant's case-in-chief. Such testimony would be limited to the following issues: (1) that drug traffickers typical do not entrust large amounts of drugs or money to unknowing couriers; and (2) that couriers, such as Defendant, do not typically participate in loading and unloading of the drugs. Such testimony is proper to help the jury understand the evidence in the case, to put that evidence in a relevant context and to ensure the jury does not decide the case in a vacuum. The evidence is relevant to the question whether Defendant knew of the drugs in the vehicle he drove into the United States; and this is exactly the type of evidence deemed appropriate in United States v. Murillo, 225 F.3d 1169 (9th Cir. 2001), and a litany of cases preceding Murillo.

/ /

Federal Rule of Evidence 702 allows an expert witness to testify if "specialized knowledge" will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. However, even when expert testimony is otherwise admissible, it may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The street value of illegal drugs, the distribution quantities, the modus operandi of drug traffickers and the structure of drug trafficking organizations are matters that are generally beyond the common knowledge of the average lay person. United States v. Valle, 72. F.3d 210, 215 (1st Cir. 1995). Thus, expert testimony in the form of an opinion regarding these subjects is likely to help a jury. Id. Whether such expert testimony will be admissible depends on the nature of the expert testimony.

The Ninth Circuit has drawn a distinction between expert testimony involving structure of drug trafficking organizations and drug courier profiles on the one hand, and expert testimony involving the modus operandi of drug traffickers or "unknowing courier," on the other. With respect to expert testimony concerning the structure of drug trafficking organizations, the Court has held that such expert testimony is generally not relevant or admissible, except (1) when the defendant is charged with a conspiracy; or (2) when such evidence is otherwise probative of a matter properly before the trial court. See, e.g., United States v. Pineda-Torres, 287 F.3d 860, 863 (9th Cir. 2002); United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), amended 246 F.3d 1150 (9th Cir. 2001) (holding that expert testimony regarding structure of drug trafficking organizations was not relevant and was prejudicial where the defendant was not charged with a conspiracy to import and there was no evidence of defendant's connection to a drug trafficking organization.[1/] With regard to expert testimony about drug courier profiles, the Ninth Circuit has held that this is inherently prejudicial and, thus, generally not admissible. See United States v. Cordoba, 104 F.3d 225, 229-30 (9th Cir. 1997).

In contrast, "unknowing courier" expert testimony is admissible, even if a defendant's case is not complex or does not involve a conspiracy charge, as long as the "unknowing courier" expert testimony is relevant. Thus, in Murillo, where the defendant, who had been convicted for possession

---

[1/] Notably, footnote three of the amended Vallejo opinion [246 F.3d 1150] makes clear that, "[t]his case does *not* involve the Government's use of 'unknowing courier' testimony, in which a law enforcement official testifies that certain drug traffickers do not entrust large quantities of drugs to unknowing transporters. Therefore, we do *not* address the admissibility of such testimony." Id. (emphasis added). Thus, Vallejo is inapplicable in this case.

with intent to distribute cocaine, challenged on relevancy grounds the admission of "unknowing courier" expert testimony during trial, the court in affirming the admission of expert testimony, held that the "unknowing courier" testimony was relevant because it went to the heart of the defense that he did not know he was transporting drugs. Murillo, 225 F.3d at 1177.

Similarly, in Cordoba, the defendant, who was convicted of a non-conspiracy case of possession with intent to distribute cocaine, challenged on appeal the admission of "unknowing courier" expert testimony. Cordoba, 104 F.3d at 227, 229. In affirming the admission of such testimony, the Ninth Circuit held that "unknowing courier" expert testimony that drug traffickers do not entrust valuable cocaine to unknowing transporters was clearly probative of the defendant's knowledge that he possessed the drugs and that the testimony's probative value outweighed any prejudicial effect. Id. at 229. See also United States v. Castro, 972 F.2d 1107 (9th Cir. 1992) (holding that the jury could have reasonably found that the defendant knew he possessed marijuana where "experts testified that the amount of cocaine, valued in the millions of dollars, would have never been entrusted to an unknowing dupe").

In the present case, the nature of the proposed testimony is precisely the type of testimony found to be relevant and admissible in Murillo and Cordoba. As in Murillo and Cordoba, Defendant was not charged with conspiracy and the unknowing courier expert testimony will go to the heart of the Defendant's expected defense that he did not know the marijuana was hidden in his vehicle and that it must have been placed there by persons known or unknown. Further, the expert testimony will help the jury's understanding of the evidence and aid its determination regarding facts at issue, namely, the Defendant's knowledge and intent, and is therefore relevant. See United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (price, quantity and quality of drugs found relevant to intent to distribute drugs and no knowledge of their presence in the car).

Indeed Murillo simply affirmed what had been, prior to Vallejo, a well-established rule in the Ninth Circuit, as well as other circuits, that expert testimony regarding the modus operandi of a particular business is admissible even in non-complex, non-conspiracy cases provided the testimony is relevant and helpful to the jury in understanding a fact at issue. See United States v. Campos, 217 F.3d 707, 712, 719 (9th Cir. 2000) (affirming admission of expert testimony during Government's case-in-chief regarding the value of marijuana seized and the structure of drug-smuggling organizations in non-

complex case in which conspiracy was not charged); Cordoba, 104 F.3d at 229-30 (holding that "expert testimony that drug traffickers do not use unknowing transporters was clearly probative of Cordoba's knowledge that he possessed narcotics").

Evidence about the drug-trafficking business, as well as admission of evidence about the modus operandi of drug couriers, is consistent with well-established law allowing as relevant to knowledge expert testimony about a criminal organization's modus operandi. See United States v. Alonso, 48 F.3d 1536, 1536 (9th Cir. 1995) (holding that law-enforcement officers may testify regarding "typical methods and techniques employed in an area of criminal activity," and explain how defendant's conduct conforms to typical methods); United States v. Gil, 58 F.3d 1414, 1421-22 (9th Cir. 1995) (admitting expert testimony regarding general practice of drug traffickers to establish defendants' modus operandi); United States v. Bosch, 951 F.2d 1546, 1549 (9th Cir. 1991) (holding that an agent with expertise in narcotics investigations may aid jury in understanding defendant's role in the charged offense); United States v. Jaramillo-Suarez, 950 F.2d 1378, 1384 (9th Cir. 1991) (holding that the expert properly testified regarding drug organization's use of pay-owe sheets to keep track of customers); United States v. Kinsey, 843 F.2d 383, 388 (9th Cir. 1988) (distinguishing testimony about a defendant's guilt or innocence from expert testimony regarding the various roles individuals may play in illegal enterprises); United States v. Guzman, 8439 F.2d 447 (9th Cir. 1988) (admitting expert agent's testimony that car switch is common maneuver used by narcotics traffickers); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir. 1987) (permitting expert testimony that members of narcotics rings play many different roles, including street salesmen, money collectors, and lookouts); United States v. Stewart, 770 F.2d 825, 831 (9th Cir. 1985); United States v. Maher, 645 F.2d 780, 783 (9th Cir. 1981) (per curium) (allowing expert testimony that a defendant's actions were consistent with the modus operandi of persons transporting drugs).

Given the case law above, this Court should allow expert testimony about, at a minimum, the role and modus operandi of drug couriers. The United States does not intend to introduce during its case-in-chief so-called profile and blind-mule testimony. See, e.g., Reid v. Georgia, 448 U.S. 438, 440 (1979) (defining "drug courier profile" evidence); United States v. Lui, 941 F.2d 844, 846 (1991). However, the United States reserves the right to introduce expert testimony about the modus operandi

of drug-trafficking organizations, testimony about vehicle-registration procedures, blind-mule, and profile testimony if Defendant opens the door to any of those categories of evidence during opening statements, cross-examination, or Defendant's case-in-chief. See Vallejo, 237 F.3d at 1016; Alatorre, 222 F.3d at 1100 n.3 (structure and organizational testimony proper because Alatorre raised the fingerprints issue); United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir. 1989) (drug-courier profile and "blind-mule" testimony admissible where defense counsel opens door).

**4. Evidence Identifying The Substance Seized As Marijuana**

Absent a stipulation by Defendant, the United States intends on calling a forensic chemist with the Drug Enforcement Agency (DEA) to testify as to the identity of the substance seized from the vehicles in this case. The United States expects him/her to testify that laboratory examinations confirmed that the contraband was marijuana, a Schedule I Controlled Substance. This testimony bears directly on an element of the charged offense: that marijuana is a prohibited drug.

This testimony is permitted under Rule 702 of the Federal Rules of Evidence, which allows witnesses qualified as experts to testify as to scientific or technical knowledge that "will assist the trier of fact to understand the evidence." See United States v. Cruz, 127 F.3d 791, 801 (9th Cir. 1997) (DEA forensic chemist properly established as expert to identify nature of controlled substance); United States v. Burden, 497 F.2d 385, 387 (8th Cir. 1974) (forensic DEA chemist, whose educational background and experience were established, was properly allowed to testify as an expert on the various tests performed on a substance to confirm that it was marijuana).

**5. Evidence Regarding Wholesale And Retail Value Of The Marijuana**

The United States also intends to present expert testimony from a U.S. Immigration and Customs Enforcement (ICE) Special Agent regarding the wholesale value and street value of the marijuana seized in this case. The assigned Special Agent has continuous contact with state and federal intelligence programs, contact with narcotics agents at the state and federal levels, contact with undercover agents who have worked closely with drug-traffickers, contact with cooperating defendants who have been or have worked with drug-smugglers, and contact with confidential informants who deal on an ongoing basis with narcotics-smuggling organizations and their tactics. He will testify that marijuana generally doubles in value when it crosses the United States-Mexico border.

From this testimony, the United States should be allowed to argue that the value of the marijuana circumstantially shows that the defendant knew the car he occupied contained marijuana, and that he possessed it with the intent to distribute. A reasonable inference from possession of this value of drugs is that the original owners would not entrust such a valuable commodity to a complete stranger who has no idea he is carrying the drugs. Also, the more valuable drugs are, the more reasonable it is to infer that they were meant to be further distributed to maximize sales. As knowledge and intent are essential elements of the offenses charged, the desired expert testimony is highly probative.

The Ninth Circuit has long allowed the introduction of such expert testimony, and has long permitted counsel to argue reasonable inferences therefrom. See, e.g., United States v. Ogbuehi, 18 F.3d 807 (9th Cir. 1994). In Ogbuehi, the defendant was charged with importing about 2.5 pounds of heroin. At trial, the United States introduced expert testimony of a DEA special agent as to the estimated street retail value of the heroin. The Ninth Circuit found that such testimony was proper, and that its probative value was not substantially outweighed by any prejudicial effect. Id. at 812 ("DEA agents can testify as to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation omitted); see also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (evidence of $100,000 street value of cocaine was relevant to proving the defendant's intent to distribute); United States v. Ramirez-Rodriguez, 552 F.2d 883, 885 (9th Cir. 1977) (evidence of resale value of drug probative of intent to distribute); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) ("The value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute") (citations omitted); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (in prosecution for transporting cocaine, testimony concerning the selling price of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States").

**6. Evidence of Personal and Distributable Amounts of Marijuana**

Finally, the United States intends to elicit expert testimony from an agent to establish that the quantity of marijuana found in the vehicle occupied by defendant is a distributable, rather than personal use amount. See United States v. Tavakkoly, 238 F.3d 1062, 1067 (9th Cir. 2001) (undisputed expert

testimony that 1.35 kg of opium was inconsistent with possession for personal use was relevant to prove defendant's intent to distribute); United States v. Alatorre, 222 F.3d 1098, 1104-05 (9th Cir. 2000) (expert testimony properly admitted to establish that quantity of marijuana was distributable amount, rather than just personal use amount).

For all of the foregoing reasons, the Court should grant the motion to allow the United States to present expert testimony.

**C. THE COURT SHOULD ADMIT DEMEANOR EVIDENCE**

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs were concealed in the vehicle. Fed. R. Evid. 701; United States v. Hursh, 217 F.3d 761 (9th Cir. 2000) (holding that a jury may consider a defendant's nervousness during questioning at Calexico port of entry); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico port of entry); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that a jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); Unites States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991) (holding that a jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

Here, witnesses for the United States may properly testify to Defendants' demeanor and physical appearance, as they have personal knowledge based upon their observations of Defendants.

**D. THE COURT SHOULD ADMIT 404(b) EVIDENCE**

As part of this motion, the United States hereby provides Defendant with notice of its intent to present 404(b) evidence. As of the date of this motion, the United States has produced to Defendant a copy of his criminal record and the documents related to his prior criminal convictions. As such, the United States intends to introduce in its case-in chief the fact that on or about September 12, 2005 and December 4, 2007, the Defendant entered the United States as the driver and sole occupant of a car which concealed 29.25 kilograms and 3.94 kilograms of marijuana, respectively. In addition, the United States intends to introduce in its case-in-chief the fact that on or about February 20, 1998, Defendant pled guilty and was convicted of possession with intent to distribute less than one kilogram of heroin.

This conduct of each case is relevant to Defendant's conduct in the other case because each instance involved substantially the same conduct he is currently charged. On both occasions he was the driver and sole occupant of a vehicle that entered the United States. On both occasions the vehicle he was driving concealed a distributable amount of marijuana. Rule 404(b) of the Federal Rules of Evidence precludes the admission of evidence of "other acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence of other acts, however, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

Rule 404 is entitled "Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes," and reads as follows:

> (a) **Character Evidence Generally.–**Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> > (1) **Character of Accused.–**Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution;
> >
> > (2) **Character of the Alleged Victim.–**Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor;
> >
> > (3) **Character of Witness.–**Evidence of the character of a witness, as provided in rules 607, 608, and 609.
>
> (b) **Other Crimes, Wrongs, or Acts.–**Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,[2/] however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404.

---

[2/] It should be noted that the Advisory Committee Notes upon the enactment of the Rule underscored that the use of the word "may" in the rule "is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion, or waste of time." Fed. R. Evid. 404(b), advis. note 1974.

Rule 404(b) thus restates the long-settled rule that evidence of prior or subsequent bad acts or crimes cannot be admitted when the sole relevancy is to show disposition to commit crimes with which the defendant is charged. See generally Michelson v. United States, 335 U.S. 469, 475-76 (1948); United States v. Hernandez-Miranda, 601 F.2d 1104, 1107-08 (9th Cir. 1979). But the Rule, as the Ninth Circuit has noted, is an inclusionary one where "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992); see also United States v. Hinostroza, 297 F.3d 924, 928 (9th Cir. 2002) (quoting United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir. 1991)) ("The only time such evidence may be excluded by rule 404(b) is if the evidence 'tends to prove only criminal disposition.'") (emphasis in original); United States v. Herrell, 588 F.2d 711, 714 (9th Cir. 1978) ("This court has also stated that Rule 404(b) is a rule of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition.") (internal quotations and citations omitted).

On the other hand, when offered to prove something other than propensity–such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident–Rule 404(b) applies to admit the "other act" evidence. See Fed. R. Evid. 404(b); United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998); United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance."). In this regard, the Rule is of vital importance, especially in criminal proceedings that typically involve inquiry into the intent of the accused. As the Court stated in United States v. Huddleston, 485 U.S. 681 (1988): "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id. at 685.

When offered for one or more of the favored purposes enumerated in the Rule, "other act" evidence is proper and becomes admissible if it meets the Ninth Circuit's five-part admissibility test. The "other act" evidence may be admissible if (1) it tends to prove a material point; (2) it is not too

remote in time; (3) it is sufficient to support a finding that defendant committed the other act;[3/] (4) (in certain cases)[4/] the act is similar to the offense charged; and (5) a determination under Rule 403 - whether the probative value is substantially outweighed by the prejudicial impact. See United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (quoting United States v. Chea, 231 F.3d 531, 534 (9th Cir. 2000)); see also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992) (restating test). Therefore, Rule 404(b) applies to either exclude "other act" evidence (when offered solely as improper conformity evidence), or to permit "other act" evidence (when offered for a proper purpose subject to the Ninth Circuit's five-part test).

Here, the United States contends that the proffered evidence meets the test: (1) the evidence tends to prove a material point–Defendant's preparation, plan, knowledge, absence of mistake or accident by importing and possessing with intent to distribute large amounts of marijuana on two separate occasions; (2) it is not too remote in time–two acts occurred within the last two years and one act occurred within the last ten years; (3) it is sufficient to support a finding that defendant committed the other acts; and (4) the acts are similar to the offense charged–acts involved drug trafficking crimes involving the importation and possession with intent to distribute a significant amount of narcotics. Moreover, under Rule 403, this evidence is highly probative of Defendant's knowledge and is not substantially outweighed by any prejudicial impact. The evidence should be admitted to prove knowledge, plan, intent, opportunity, and lack of mistake or accident.

/ /

/ /

---

[3/] In United States v. Huddleston, 485 U.S. 681, 685 (1988), the Supreme Court ruled that a district court need not make a preliminary finding that the offering party proved the specific act evidence by a clear and convincing or preponderance of the evidence standard. Instead, the Court held that such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the specific act. See id.

[4/] "When evidence of a prior act is offered to prove knowledge, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the knowledge." United States v. Santa-Cruz, 48 F.3d 1118, 1119 (9th Cir. 1995) (quoting United States v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir. 1993)). When the evidence is offered to show intent, however, the similarity requirement is of utmost importance. See United States v. Adrian, 978 F.2d 486, 492-493 (9th Cir. 1992) (noting the significance of similarity for intent type evidence because "if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action").

**E. <u>THE COURT SHOULD ADMIT 609 EVIDENCE</u>**

The United States intends to use Defendant's prior convictions for impeachment purposes under Rule 609. Specifically, should Defendant testify, the United States intends to inquire about Defendant's felony conviction on February 20, 1998 for possession with intent to distribute less than one kilogram of heroin, in violation of 21 U.S.C. § 841(a). If Defendant testifies at trial, he will place his credibility squarely at issue, and the United States should be able to inquire in particular his conviction.

Federal Rule of Evidence 609(a) provides in pertinent part:

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Fed. R. Evid. 609(a). Evidence that an accused has been convicted of a crime punishable by imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused." <u>United States v. Martinez-Martinez</u>, 369 F.3d 1076, 1088 (9th Cir. 2004) (analyzing Rule 609(a)). Evidence of a conviction is not admissible if "a period of more than ten years has elapsed since the date of conviction or date of release of the witness from confinement, whichever is the later date." Fed. R. Evid. 609(b).

The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. <u>United States v. Browne</u>, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court should consider (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the Defendant's testimony; and (5) the centrality of the Defendant's credibility. <u>Id.</u> at 762-63. <u>See</u> <u>also</u> <u>United States v. Hursh</u>, 217 F.3d 761 (9th Cir. 2000). The Court need not analyze each of the five above-referenced factors explicitly. <u>See</u> <u>United States v. Jimenez</u>, 214 F.3d 1095, 1098 (9th Cir. 2000).

Here, Defendant was convicted in 1998 for possession with intent to distribute less than one kilogram of heroin and sentenced to 37 months in custody. Based on this conviction, which stemmed from similar conduct of possessing a distributable amount of a dangerous narcotic, at least four out of

the five Browne factors weigh heavily in favor of admissibility. First, the impeachment value of Defendant's felony conviction is high. Defendant's felony conviction casts doubt on Defendant's honesty, and therefore has significant impeachment value. Second, the importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called to testify only if he intended to claim that he was unaware of the presence of the marijuana in the vehicle he purchased. Third, because such defenses could only plausibly be developed through the Defendant's own testimony, his credibility in asserting such alleged facts would be central to the case. Finally, the Browne factors regarding subsequent criminal history, also tend to lean towards admissibility, and the probative value of admitting Defendant's prior felony convictions for purposes of impeachment remains high relative to whatever unfair prejudicial effect it might have. Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by means of an appropriate jury instruction.

Accordingly, the United States should be allowed to introduce evidence of Defendant's prior felony conviction under Rule 609(a)(1) if he elects to testify at trial.

**F. THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

The United States anticipates that Defendant may improperly attempt to introduce testimony regarding Defendant's specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). United States v. Barry, 814 F.2d 1400, 1403 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985). Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same. . . ."

A character witness can not offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant. United States v. Hedgecorth, 873 F.2d 1307, 1313 (9th Cir. 1989) ("[W]hile a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible"). In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit Court of Appeals has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible. The appellate court, however, has held that asking a defense witness about the defendant's propensity

to engage in a specific type of criminal activity is not allowed under Rule 404(a). See United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992) (holding that it is impermissible to ask a character witness about the defendant's propensity to engage in large scale drug dealing).

Thus, Defendant should be prohibited from introducing testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity to be involved in drug smuggling.

**G. THE COURT SHOULD PRECLUDE EXPERT TESTIMONY BY DEFENSE**

The United States has made a request from the Defendant for reciprocal discovery. It is permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. While defense counsel may wish to call an expert to testify, Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony if he fails to disclose such information by the expert discovery cut off date set by the Court.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

/ /

**H. THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e). Generally, motions are capable of pretrial determination if they raise issues of law, rather than issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where"the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendants must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendants make a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**I. THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, FINANCES, EDUCATION, AND POTENTIAL PUNISHMENT**

Evidence of, and thus argument referring to, Defendants' health, age, finances, education and potential punishment is inadmissible and improper. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2003).

Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). Any mention of penalty or felony status is irrelevant as it sheds no light on the Defendants' guilt or innocence. Therefore, the United States respectfully requests this Court to preclude any mention of possible punishment at any point in this trial.

Reference to Defendants' health, age, finances, education and potential punishment may be relevant at sentencing. However, in a drug smuggling trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

**J. THE COURT SHOULD PROHIBIT SELF-SERVING HEARSAY**

The Defendant must be precluded from introducing his own statements through the testimony of another witness, the opening statement of counsel, or argument by counsel. Any such attempt would be impermissible because those statements are hearsay. While the United States may use the statements

of a defendant against him under Federal Rule of Evidence 801(d)(2) (admission by party-opponent), this Rule may not be relied upon by the Defendant because he is not the proponent of the evidence and the evidence is not being offered against him (but rather on his behalf). Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination by the United States. See e.g., United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1987).

Nor can Defendant rely on Rule 801(d)(1)(B), which provides that a statement is not hearsay if:

> The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

A prior consistent statement is not admissible if it is introduced in the absence of impeachment. See United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976) (appellant offered to introduce and play tape recording of interview of appellant and DEA agent to reinforce appellant's credibility). Moreover, even if the declarant's testimony has been impeached, prior consistent statements are not admissible if the declarant had motive to give false information at the time that the prior out-of-court statement was made. See United States v. DeCoito, 764 F.2d 690, 694 (9th Cir. 1985) (declarant's prior consistent statement not admissible for purposes of rehabilitation if declarant had motive to lie to avoid prosecution when prior statement was made); United States v. Rohrer, 708 F.2d 429, 433 (9th Cir. 1983) (diagram drawn by declarant not admissible as prior consistent statement because declarant had motive when diagram was made to fabricate, that is, driving better leniency bargain with the government).

Finally, Defendant cannot rely on Rule 803(3), which provides that the hearsay rule does not exclude then existing mental, emotional, or physical condition. See Fed.R.Evid. 803(3). Addressing this issue in the context of a "derivative entrapment" defense, the Ninth Circuit affirmed the trial court's exclusion of testimony by a witness that the defendant had told the witness that the defendant was afraid of government agents. The court relied on the language emphasized above in Rule 803(3), holding that the rule did not except the witness's testimony from the hearsay rule. See United States v. Emmert, 829 F.2d 805, 809-10 (9th Cir. 1987).

/ /

Defendant cannot introduce his own statements through the testimony of another witness or by improper reference during opening statements. Defendant is free to provide a statement from the witness stand where he would properly be subject to searching cross-examination.

**K. RENEWED MOTION FOR RECIPROCAL DISCOVERY**

The Court has granted the United States' request for reciprocal discovery. As of the date of these motions, Defendant has produced **no** reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States will object at trial and ask the Court to suppress any evidence at trial that has not been provided to the United States.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully asks that the Court grant the United States' motions in limine.

DATED: April 25, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney