**SYLVIA BAIZ**
California State Bar No. 124367
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **LUNA-SANCHEZ**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. JEFFREY T. MILLER**)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>**AURELIO LUNA-SANCHEZ,**<br>Defendant. | ) | Criminal No. 08-CR-0141 JM<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** |

**I.**

**STATEMENT OF FACTS**

**A. December 4, 2007**

Mr. Sanchez was arrested on December 4, 2007 at the as he entered the United States through the Otay Mesa port of entry. He was the driver of a car which was alleged to have three packages of marijuana weighing 3.94 grams of marijuana. According to agent reports, two packages were hidden under the hood of the car and one package was later found under the dashboard. The declaration in support of the complaint indicates that there was 3.94 kilograms of marijuana found hidden in the car, but the evidence processing slip prepared by the customs officers involved indicates that there was only 2.32 kilograms of marijuana. Mr. Sanchez relied on the assessment of the amount of marijuana found by customs, not the amount contained in the complaint, which was prepared by an ICE officer, Carol Bracamontes.

Because of the discrepancy in the amounts of marijuana found which made a difference in the guideline range, Mr. Luna-Sanchez did not accept the government’s fast-track offer. He was

subsequently indicted on January 16, 2008 for importing and possessing with intent to distribute 3.94 kilograms of marijuana. In addition, on that same date, January 16, 2008, Mr. Sanchez was also indicted for importing and possessing with the intent to distribute 29.25 kilograms of marijuana on September 12, 2005.

**B. September 12, 2005.**

Mr. Sanchez was previously arrested on September 12, 2005 at the Otay Mesa port of entry as he attempted to enter the United States. The 1994 Jeep Cherokee he was driving was alleged to have contained 29.25 kilograms of marijuana hidden in the spare tire and the gas tank. That case (05CR1661-JAH) was dismissed on August 11, 2006 by Judge Houston, "without prejudice." The court records do not disclose the reasons for the government's decision to dismiss case no. 05CR1661. However, in a subsequent report, the government has indicate4d that it was dismissed due to witness misconduct. and allow the defense to examine and re-weigh it.

Mr. Luna-Sanchez incorporates the Statement of Facts from his previously filed motions and adds the following:

On September 15, 2005, Mr. Luna-Sanchez sent Assistant United States Attorney William Narus a discovery and preservation letter in which he requested, among other things, preservation and discovery of "[e]vidence [s]eized"; preservation of "alleged contraband"; and the opportunity to inspect "[t]angible [o]bjects." 9/15/5 Discovery Letter, attached as Exhibit A. On October 28, 2005, the Court signed a written order, ordering the United States government and its agents to "preserve the narcotics, vehicle, evidence seized incident to Mr. Luna-Sanchez's arrest, and items seized from the vehicle until December 2, 2005 or further order from this Court." See 10/28/5 Court Order, attached as Exhibit B. On November 14, 2005, the time mutually agreed on by a defense investigator, Rosa Tovar, and the government's case agent, Special Agent Kenneth P. Hart, Ms. Tovar traveled to Otay Mesa to examine and re-weigh the narcotics evidence. When she arrived, Agent Hart informed her that the bulk of the narcotics had been destroyed. Ms. Tovar was permitted to examine and re-weigh the approximately 1 kilogram narcotics sample that the government had retained

The agents seized two cellular phones in this case, both of which Mr. Luna-Sanchez allegedly claimed as his own. Government-produced discovery states that agents searched the telephone address book of at least one of these cellular phones. Mr. Luna-Sanchez has reason to believe that agents searched both of his cell phones.

## II.

## COMPEL FURTHER DISCOVERY

Mr. Aurelio Luna-Sanchez request following Brady information. See, Brady v. Maryland, 373 U.S. 83 (1963).

2) All results or reports of scientific tests or experiments, or copies of which within the possession, control, or custody of the government or which are known or become known to the attorney for the government, that are material to the preparation of the defense, including, but not limited to chemical analysis of the marijuana, fingerprint analysis and/or metals. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963).

3) Mr. Luna-Sanchez to preparing the DEA 7 and/or any other reports of analysis conducted on the alleged seizure of drugs in this case. These must be disclosed, once a request is made, pursuant to Fed.R.Crim.Pro. 16(a)(1)(D). In this case, this would also be Brady material if exculpatory. Mr. Luna-Sanchez also specifically requests that the marijuana seized in this case and (05CR1661-JAH) also be made available to the defense. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963)

## III.

## MOTION TO SEVER THE TRIALS OF THE TWO COUNTS IN THE INDICTMENT

Mr. Luna-Sanchez moves to sever the trial for counts one and two from counts three and four contained in the indictment issued against him on January 16, 2008. Mr. Luna-Sanchez is charged with importing approximately 29.25 kilograms of marijuana on September 12, 2005 (count 1) and 3.94 kilograms of marijuana on December 4, 2007 (count 3); and possession with intent to distribute 29.25 kilograms on September 12, 2005 (count 2) and 3.94 kilograms of marijuana on December 4, 2007 (count 4) in the indictment in violation of 21 U.S.C. §§ 841(a)(1), 952, 960.

**The Federal Rules of Criminal Procedure Require Severance in This Case.**

The issue regarding whether a "misjoinder of charges" exists here is a question of law for this Court to resolve and is reviewed *de novo* by the appellate courts. See United States v. Sarkisian, 197 F.3d 966, 975 (9th Cir. 1999).

Federal Rule of Criminal Procedure 8(a) provides for the joinder of two or more offenses if the offenses are (1) of the same or similar character; (2) based on the same act or transaction; or (3) connected together or part of a common scheme or plan. Fed. R. Crim. P. 8(a); see also United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988), overruled on other grounds, United States v. Brackeen, 969 F.2d 827 (9th Cir. 1992). Thus, the Court must find that one of the conditions listed in Fed. R. Crim. P. 8(a) exist or sever the two counts. Mr. Luna-Sanchez is alleged to have committed two separate offenses two years apart. Joinder of the two charges is legally incorrect and would unduly and unfairly prejudice Mr. Luna-Sanchez's ability to receive a fair trial; thus, infringing upon his due process rights.

The counts are not "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Counts 1 and 2 were allegedly committed over two years prior to those in counts 3 and 4. Counts 1 and 2 are not connected to counts 3 and 4 and are not connected through a common scheme or plan. To determine whether the Counts are sufficiently connected together, the Court looks for a logical relationship between the offenses. Sarkisian, 197 F.3d at 975. Therefore, severance is required under Fed. R. Crim. P. 8.

The law is clear that the validity of a Rule 8 joinder is based solely on the allegations in the indictment. United States v. Terry, 911 F.2d 272, 276 (9th Cir. 1990) (emphasis added). While the broad policies favor joinder and the word "'transaction' is to be interpreted flexibly and 'may comprehend a series of related occurrences," the indictment must allege some commonality between the joined offenses. See Terry, 911 F.2d at 276. In this case, the only commonality between counts 1and 2 compared to 3 and 4 is the fact that the allegations involve marijuana. As a result, the counts are improperly joined and the Court must order a severance.

**<u>The Extreme Prejudice to Mr. Luna-Sanchez that Results From Joinder of counts one and two with counts three and four Requires Severance in the Interest of Justice.</u>** If this Court does not find improper joinder of offenses per Fed. R. Crim. P. 8 as argued above, it should still sever the trials for the two charges in the indictment because of the extreme prejudice that Mr. Luna-Sanchez would suffer if the offenses were tried together. Rule 14 is captioned: "Relief from Prejudicial Joinder," and provides that if joinder "in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts . . . ." Fed. R. Crim. P. 14(a).

If charges one and two are allowed to be joined in trial with counts three and four, the government will of course introduce evidence regarding both dates–September 15, 2005 and December 4, 2007–both of which will be the principal evidence that he committed the other crime on the other date. Given this fact and the danger of unfair prejudice as a result of the government's charging decision, this Court should sever the trials of the two counts.

**<u>Precedent Supports Severance of These Two Distinct Offenses.</u>**

In <u>United States v. Lewis</u>, 787 F.2d 1318 (9th Cir. 1986), the Ninth Circuit acknowledged that "[t]here is a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." <u>Id.</u> at 1321 (quotation and citation omitted). Thus, the Court "recognize[d] that the danger that the jury's perception of the defendant will be adversely affected by the evidence of the prior crimes is so strong as to create a presumption favoring severance." <u>Id.</u> at 1322.

This Court should rely upon the Ninth Circuit's consideration of improper joinder issues as addressed in <u>United States v. Sarkisian</u>, 197 F.3d 966 (9th Cir. 1999), and <u>Bean v. Calderon</u>, 163 F.3d 1073 (9th Cir. 1998). These cases indicate that severance of the 2005 charges from the 2007 charges is necessary. In <u>Sarkisian</u>, the Ninth Circuit held that joinder in the same indictment of offenses of extortion and trafficking in stolen auto parts was error because there was "not a sufficient logical relationship between them" — it was "not an instance where one criminal activity naturally flow[ed] from separate criminal conduct." <u>Sarkisian</u>, 197 F.3d at 975.

One year earlier, in Bean v. Calderon, 163 F.3d 1073 (9th Cir. 1998), the Ninth Circuit reversed a conviction resulting from misjoined counts. In Bean, the petitioner was charged in state court with two separate murders that occurred three days apart. Id. 1075-76. Over his objection, the trial court consolidated the two charges in one trial. Id. The Ninth Circuit held that trying the two charges together violated due process. Id. at 1083. It found there is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." Id. at 1084 (quoting United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir. 1986)). Further, the court recognized studies establishing "that joinder of counts tends to prejudice jurors' perceptions of the defendant and of the strength of the evidence on both sides of the case." Id. The court based its finding of prejudice on the facts that: (1) the evidence was not cross-admissible, and (2) the jury may have considered the two charges in concert as reflecting the defendant's modus operandi.

Accordingly, the court observed that the jury could not "reasonably [have been] expected to 'compartmentalize the evidence' so that evidence of one crime [did] not taint the jury's consideration of another crime," Bean v. Calderon, 163 F.3d at 1084 (quoting United States v. Johnson, 820 F.2d 1065, 1071 (9th Cir. 1987)), when the State's closing argument and the import of several instructions it heard urged it to do just the opposite. Id. Thus, it found the jury instructions did little to lessen the prejudice from the joinder. While the Court affirmed one conviction that was supported by "strong" evidence, it found conviction on the other murder, robbery, and burglary count violated due process and therefore, reversed. Id. at 1086.

Here, the evidence from the 2005 offense would not be cross-admissible had the government chosen to charge them separately. The offenses do not have common physical evidence, except for the same type of drug. Thus, like in Bean, the jury, even if instructed to do otherwise, could not compartmentalize the evidence as to each offense and would likely deduce guilt from one offense from inadmissible evidence from the other. As a result, like in Sarkisian and Bean, misjoinder of the two importation charges here unquestionably would prejudice Mr. Luna-Sanchez by its "substantial and injurious effect or influence in determining the jury's verdict" as to each alleged charge. See

United States v. Lane, 474 U.S. 438, 449 (1986).

## IV.
## MOTION TO DISMISS INDICTMENT DUE TO GOVERNMENT'S DESTRUCTION OF NARCOTICS EVIDENCE

The government has both a statutory and constitutional obligation to provide Mr. Luna-Sanchez with items material to preparing his defense. See U.S. Const., amends. V, VI; Fed. R. Crim. Pro. 16; Brady v. Maryland, 373 U.S. 83, 87 (1963). This includes an obligation to preserve evidence from loss or destruction. See United States v. Cooper, 983 F.2d 928 (1993). By destroying the bulk of the seized narcotics in violation of Court order in 2005 (See exhibit A, court's order), the government seriously violated its statutory and constitutional obligations. The government's misconduct denies Mr. Luna-Sanchez his Fifth Amendment due process rights, deprives him of discovery due to him under Rule 16, and violates a Court order. The remedy for these violations is dismissal of counts 1 and 2.

**A. The Government's Destruction of Evidence Violates Mr. Luna-Sanchez's Due Process Rights** The government's destruction of the bulk of the narcotics evidence in this case violates Mr. Luna-Sanchez's Fifth Amendment right to due process of law. The standard by which this Court evaluates a due process claim based on destruction of evidence varies depending on whether the evidence destroyed is material and exculpatory or only potentially useful to the defense. Illinois v. Fisher, 540 U.S. 544, 547-48 (2004); United States v. Dring, 930 F.2d 687, 694 n.7 (9th Cir. 1991). The government's failure to produce material, exculpatory evidence upon a defendant's request violates due process "irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87; see also United States v. Bagley, 473 U.S. 667, 68182 (1985). However, where the government loses "potentially useful evidence," a different test applies. Fisher, 540 U.S. at 547-48. In that case, the defendant must show that: 1) the evidence was "potentially useful" to the defense, Arizona v. Youngblood, 488 U.S. 51, 58 (1988); California v. Trombetta, 467 U.S. 479, 489 (1984); see also Cooper, 983 F.2d at 931; and 2) that the government disposed of the evidence in bad faith, id. See also Fisher, 450 U.S. at 547-48. The government's destruction of evidence in this case rises to

a due process violation even under Youngblood's more stringent standard. This is because the evidence destroyed was at least potentially useful to the defense, and the government destroyed the evidence in bad faith.

**1. The Evidence Was "Potentially Useful" to the Defense**

Evidence need not be apparently exculpatory to trigger Youngblood. To the contrary, Youngblood is triggered where the government destroys evidence that is "potentially useful" to the defense, Youngblood, 488 U.S. at 58, or "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." id. at 58. The government destroyed potentially useful evidence in this case. The government destroyed the bulk of the narcotics seized in this case, retaining only a small sample. The government's failure to give Mr. Luna-Sanchez the opportunity to examine the narcotics in this case deprives him of potential avenues of defense. For example, if the drugs were not fresh, then it is far less likely that Mr. Luna-Sanchez was involved in the smuggling and far more likely that the drugs were a "lost load"-that is, a load that was either lost or forgotten, and thus happened to be in the vehicle when the vehicle was purchased. Mr. Luna-Sanchez will never know how fresh the bulk of the narcotics was, because the government destroyed it before he could examine it.

Similarly, Mr. Luna-Sanchez could have gained exculpatory evidence by testing the packages for fingerprints. It is highly likely that the packages were not marked with Mr. Luna-Sanchez's fingerprints but were marked with the fingerprints of others. A third party's fingerprints on the packaging would have tended to exculpate Mr. Luna-Sanchez, while inculpating someone else.

Finally, Mr. Luna-Sanchez could have gained exculpatory evidence by re-weighing the packages of narcotics without their packaging materials, which certainly would have reduced the weight of narcotics at issue in this case.

**2. The Government Destroyed the Evidence in Bad Faith**

The government's destruction of the evidence was in bad faith. Although there remains no clear-cut test for discerning bad faith, certain principles emerge from the case law. Relevant to the inquiry is whether the government was aware of the evidence's exculpatory value before its

destruction, Cooper, 983 F.2d at 931, and the extent to which the federal prosecutor was involved in the evidence's destruction, United States v. Loud Hawk, 628 F.2d 1139, 1152 (9th Cir. 1979 (en Banc)). Application of these principles confirms that the government acted in bad faith here.

The government was aware of that the evidence had value to the defense; yet destroyed it anyway. As the Ninth Circuit explained in Cooper: Youngblood's bad faith requirement dovetails with the first part of the Trombetta test: that the exculpatory value of the evidence be apparent before its destruction. The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed. Cooper, 983 F.2d at 931. Importantly, bad faith need not rise to the level of overt destruction of evidence to gain a tactical advantage or similarly dramatic examples of prosecutorial misconduct. This type of"bad faith" would gut Youngblood's due process protection by making bad faith almost impossible to prove. Instead, the intentional and unreasonable destruction of apparent exculpatory evidence satisfies the bad faith standard. In Cooper, for example, the Ninth Circuit noted the intrinsic link between bad faith and knowledge and charged the government with knowledge of evidence's exculpatory value based on the defense's requests for the evidence and the government's assurances that it was preserving the evidence. Id. Affirming the relationship between bad faith and the government's knowledge of exculpatory value, in United States v. Bohl, 25 F.3 d 904 (10th Cir. 1994), the Tenth Circuit found bad faith and dismissed the indictment where the government destroyed evidence after it was put on notice that the defendants believed the evidence could be exculpatory. Id. at 911. The courts' analysis in these cases applies with equal force here.

In Cooper, the government destroyed laboratory equipment allegedly used to produce methamphetamine after "[t]he equipment's value as potentially exculpatory evidence was repeatedly suggested to government's agents," and the "government agents stated that they held [the evidence] as evidence" in response to the defense's discovery requests. Id. at 931. Based on the exchanges between the defense and the government regarding the evidence, the Court held that "[t]he equipment's exculpatory value was apparent to government before they, in bad faith, allowed its destruction." Id.

As in Cooper, in this case, Mr. Luna-Sanchez repeatedly requested the seized evidence as discovery, indicating his belief that it was potentially exculpatory. See, e.g., Ex. A (9/15/5 Discovery Letter). As in Cooper, in this case, the government signaled its awareness of the evidence's potentially exculpatory value by affirmatively stating to Mr. Luna-Sanchez and the Court that it did not oppose Mr. Luna-Sanchez 's request to examine and re-weigh the narcotics. Gov't Motion at 4:23-24. Furthermore, had the government any doubt regarding the value of the evidence to the defense, that doubt should have been dispelled when, at Mr. Luna-Sanchez 's request, the Court signed a written order demanding preservation of the narcotics. Ex. A (Court Order). Moreover, the defense was not told until its investigator sought to view and re-weigh the evidence with the agent, that it had been destroyed. Under Cooper, this Court must charge the government with knowledge of the destroyed evidence's exculpatory value in this case. See also Bohl, 25 F.3d at 911 (finding bad faith in part because the government was on notice that the destroyed evidence was potentially exculpatory).

Mr. Luna-Sanchez contends that the circumstantial evidence of bad faith in this case is enough to satisfy Youngblood. In the alternative, this Court should grant Mr. Luna-Sanchez an evidentiary hearing at which this Court and Mr. Luna-Sanchez can question the government agents responsible for destroying this evidence regarding their procedures and motives..

**B. The Government's Destruction of Evidence Violated Rule 16 and a Court Order**

The government's destruction of evidence in this case violated Rule 16 and directly contradicted a Court order. Among other things, Rule 16 provides: (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies of portions of any of these items, if the item is within the government's possession, custody, or control and:

(I) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to defendant.

Fed. R. Crim. Pro. 16(a)(1)(E). There is no question that the government intends to use the narcotics evidence in its case in chief. Thus, Mr. Luna-Sanchez was entitled to examine it under Rule 16. Even more troubling, by destroying the evidence in this case, the government violated a Court order. For the Court's order to have any weight, the government must be held to it. Sanctions are appropriate.

**C. The Remedy for the Government's Destruction of Evidence is Dismissal of Counts 1 and**

Due to government's destruction of evidence in the face of repeated defense requests for examination and a Court order, the only just remedy is dismissal of the indictment. See e.g., Cooper, 983 F.2d 928 (affirming dismissal of indictment for destruction of evidence); Bohl ,25 F.3 d 904 (dismissing indictment for destruction of evidence); United States v. Pollack, 417 F. Supp. 1332 (D. Mass. 1976) (same). Through no fault of his own and bad faith on the government's part, Mr. Luna-Sanchez now faces the prospect of a trial marred by a denial of his Fifth Amendment rights. Ninth Circuit precedent supports dismissal of the indictment in this case. Cooper, 983 F.2d 928, is on point. In that case, the government destroyed laboratory equipment that may have exculpated a defendant despite the defendant's request for preservation. Id. The government argued that a stipulation, a jury instruction, or suppression of the evidence were appropriate remedies. Id. at 932-33. However, the Ninth Circuit disagreed, stating: "[The defendants] should not be made to suffer because government agents discounted their version and, in bad faith, allowed its proof, or its disproof, to be buried in a toxic waste dump." The same reasoning applies here. Mr. Luna-Sanchez should not be made to suffer because the government retained only the evidence useful to it (a marijuana sample) and destroyed everything else.

At this juncture, there is no remedy besides dismissal of counts 1 and 2 that will mitigate the prejudice Mr. Luna-Sanchez has suffered by being unable to investigate, examine, or test the physical evidence that the government seized and then destroyed. Thus, like the courts in Cooper and Bohl, this Court has "no choice but to . . . dismiss the indictment." Id.

**D. In the Alternative, The Court Should Instruct the Jury Regarding Destruction of Evidence, Prohibit the Government From Introducing Evidence Related to the Destroyed Evidence in its Case in Chief and Prohibit the Government From Introducing Quantity Evidence Beyond the**

**Amount of the Narcotics That It Actually Preserved prior to trial in the 2005 case.**

The only appropriate remedy in this case is dismissal of counts 1 and 2 of the indictment. However, in the alternative and without waiving his claim that anything short of dismissal would irreparably violate his due process rights, Mr. Luna-Sanchez suggests that this Court should grant the following remedies if it declines to dismiss. First, the Court should allow the defense to present evidence regarding the destroyed evidence to the jury, and then instruct the jury that the government destroyed evidence in this case and that the jury should presume that the destroyed evidence would have been unfavorable to the government's case. Second, the Court should prohibit the government from introducing in its case-in-chief evidence related to the destroyed evidence, such as testimony, reports, photographs, and documents. See, e.g., Rule 16(d)(2)© (suggesting, as a Rule 16 sanction, that the Court "prohibit the party from introducing the undisclosed evidence). Unlike in cases where the prosecution neglects to produce material evidence, in this case, suppression of the evidence actually seized is not at issue, because it no longer exists. However, similar principles apply. Third-and relatedly-the Court should prohibit the government from introducing evidence of drug quantity beyond the amount of narcotics that it actually preserved, which in this case corresponds to the quantity of the core sample. A government agent presumably weighed the bulk narcotics once without removing the considerable packaging surrounding the alleged drugs. Given the government's policy to weigh narcotics in this manner, defendants in this district request to re-weigh narcotics without packaging; and, as it did in this case, the Courts invariably grant defendants' requests. It would heap injustice upon injustice and result in an egregious due process violation to force Mr. Luna Sanchez to "accept" the government's estimate of drug quantity under circumstances when that estimate can only be much higher than the narcotics' actual weight, simply because the government destroyed the evidence in violation of its discovery violations and a Court order. However, because the government has destroyed the only means by which Mr. Luna-Sanchez could have effectively combated the government's quantity evidence, allowing the government to introduce quantity evidence beyond the amount of the narcotics sample retained would do precisely that.

## V. MOTION TO SUPPRESS EVIDENCE

Mr. Luna-Sanchez moves to suppress all evidence the government gathered as a result of its warrantless search of the cellular phones agents seized when Mr. Luna-Sanchez was arrested. The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Warrantless searches are per se unreasonable under the Fourth Amendment subject to only a few specifically established and well delineated exceptions. Mincey v. Arizona, 437 U.S. 385, 390 (1978). The government's seizure of information from the internal and external displays on Mr. Luna-Sanchez' s cellular phones was unreasonable under the Fourth Amendment. Courts have recognized that intangible items, such as information, may be seized within the meaning of the Fourth Amendment. In United States v. Freitas, 800 F.2d 1451 (9th Cir. 1986), for example, the Ninth Circuit addressed the seizure of intangible items within the context of Federal Rule of Criminal Procedure 41. Rule 41, which is titled "Search and Seizure," defines "property" to "include[] documents, books, papers, any other tangible objects, and information." Fed. R. Crim. P. 41 (emphasis added). In Freitas, 800 F.2d at 1455, the information to be seized was "information regarding the 'status of [a] suspected clandestine methamphetamine laboratory." Agents, armed with search warrants, seized the information by simply viewing the defendant's home and storage lockers. Id. at 1453.

Here, just as in Freitas, agents seized information-that is, data on the phone-by viewing and noting the information. Because the agents seized this information without a warrant, without consent, and not pursuant to a proper exigent circumstance, this Court must suppress all data seized from the phone, as well as the evidentiary fruits of that data. Wong Sun v. United States, 371 U.S. 471 (1963).

## VI.

## THE PROPOSED EXPERT TESTIMONY SHOULD BE EXCLUDED: IT IS IMPERMISSIBLE UNDER NINTH CIRCUIT PRECEDENTS AND INAPPLICABLE UNDER THE FACTS OF THIS SIMPLE, NON-CONSPIRACY "BORDER BUST."

### A. Notice Was Not Provided.

The prosecutor claims that his expert witness is going to provide certain very specific and highly prejudicial evidence but he does not yet know the identity of this individual. It is questionable how he knows that an expert will opine about these specific and damning facts, *i.e,*, that there are no blind mules ever, and regarding the purposes, specifically, the risk to the drugs, which are the reasons why smugglers inform their couriers, when he has never spoken to this expert and does not even know his identity.

The defense requests the identity and C.V. of the proposed expert as soon as possible so that timely motion and if necessary, trial preparation, as to this witness, can occur. Failure to provide timely notice of the expert will violate Ms. X's Fifth and Sixth Amendment right to adequately prepare for trial. See Rule 16(a), U.S. Const. V, VI.

**B. The Government Has Certain Discovery Obligations.**

The government has not disclosed the materials the expert relies upon to form his or her opinions. The Ninth Circuit noted in its recent en banc opinion that there, the government conceded that it must disclose specific materials relied upon by its experts to defense counsel. United States v. Fort, 472 F.3d 1106, 1121 (9th Cir. 2007). The Fort court agreed with the government, stating that "materials on which a proposed expert witness relies [in developing his opinions] must be produced to Defendants in discovery." Id. at 1121. This is so even if the materials would otherwise be protected under the federal rules. Id. In Fort, the en banc court remanded the case for a hearing in district court to determine whether or not the expert actually relied upon certain reports, because if he had, they had to be disclosed. Id.

Here, the as-yet-unknown expert, will have relied upon: his own cases, cases he assisted with, interviews with smugglers and informants, contact with undercover agents and operations, ongoing communication with fellow agents and other law enforcement personnel, literature, publications, seminars and courses along with formal training. Thus, every one of the arrests, of his own cases, of his interviews and communications, along with the publications should be provided to defense counsel. The seminars, courses and training should be identified. See id.; see also Fed. R. Crim. P. 16(a)(1)(G), including "written and oral reports, tests, reports, and investigations," as well as "any

[other] information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts," Fed. R. Crim. P. 16, Advisory Comm. Notes, 1993 Amendment, ¶ 5.

This requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross examination." Fed. R. Crim. P. 16, Advisory Comm. Notes, 1993 Amendment, ¶ 1. The rule has the additional benefit of providing counsel with the substantive information necessary to conduct a thorough and useful Daubert/Kumho / Rule 702 inquiry, which, in turn, assists the Court in performing its gate-keeping function.

Before the Court can admit expert testimony under Rule 702, it must ensure itself that 1) the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; 2) the expert is qualified by "knowledge, skill, experience, training, or education"; 3) "the testimony is based upon sufficient facts or data"; 4) "the testimony is the product of reliable principles and methods"; and 5) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see also Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) ("Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant, but reliable.'" (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)).

In Kumho, the Supreme Court made clear that this inquiry applies, not only to "scientific" testimony, but also to testimony based on specialized knowledge, such as the testimony the government proposes here. Id. at 150-52.

Furthermore, a court evaluating whether proposed "specialized knowledge" testimony has a reliable basis under Daubert and Kumho must look beyond "bare qualifications" and an expert's conclusions to the facts, reasoning, and methodology behind the conclusions. United States v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002). In Hermanek, for example, the Ninth Circuit held that the district court erroneously admitted the testimony of a government expert called to interpret coded drug conversations where "[t]he district court relied solely on [the expert's] general

qualifications without requiring the government to explain the method [the expert] used to arrive at his interpretations of words he had never encountered before." Id. at 1094. The Ninth Circuit found inadequate the expert's generic reliance on his experience, stating: "The factors [the expert] identified—his knowledge and prior investigation of defendants and the 'evidence seized' in the case—were too vague and generalized to satisfy the requirements of Rule 702." Id. By the same token, the government's proffered expert here must "'explain the reasoning and methods underlying [his] conclusions,'" id. (quoting Claar v. Burlington N. R.R. Co., 29 F.3d 499, 502 (9th Cir. 1994)), and "explain in . . . detail the knowledge, investigatory facts and evidence he [is] drawing from," id., before the Court can admit his testimony.

Here, not only the identity but the basis of the expert's testimony has not been revealed. The mystery expert would apparently rely upon materials not yet produced to the defense, including reports and reference materials. Thus, the bases of proposed experts's opinions—the "materials on which [the] proposed expert witness relie[d] [in developing his opinions]," Fort 472 F.3d at 1121—are completely unknown to the defense. All of this information -- along with the identity of its source -- must be produced.

**C. The Proposed Evidence Does Not Comply with Rule 702.**

In this non-complex case, with the single point of contention being knowledge, the jury is fully competent to determine whether Mr. Luna-Sanchez had knowledge of the drugs without the help of an expert. As this Court is well-aware, this a question that juries answer in this district every week without such help. See Vallejo 273 F.3d 1008, amended, 246 F.3d 863 (9th Cir. 2001) (structure and modus operandi of drug trafficking organizations was not relevant . . . . Nor was it needed to assist the jury's understanding of a complex criminal case"). Furthermore, the government's notice does not come close to establishing that this expert's testimony is based on sufficient facts or reliable principles of analysis. See Rule 702. The proposed expert testimony should be excluded.

**VII. EVIDENCE OF "NERVOUSNESS" LACKS PROBATIVE VALUE, IS OVERLY PREJUDICIAL AND LACKS PROPER FOUNDATION**

A. Such Testimony Should Be Precluded Under Fed. R. Evid. 403: Testimony That Someone Was "Nervous" Is Irrelevant And Overly Prejudicial.

In this case, the Agent Gilliland, the primary inspector in the 2005 case has been convicted of a felony for alien smuggling. He is the agent who would testify about nervousness.

Fed. R. Evid. 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice." Lay witness testimony regarding nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance. United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000) (*en banc*) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) ("We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on the nervousness . . . must be treated with caution"); see Gall v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous" was in error because -- "we have long been skeptical of such lay testimony"), overruled on other grounds in Bowling v. Parker, 344 F.3d 487 (6th Cir. 2003); United States v. Burks, 547 F.2d 968, 970 (6th Cir. 1976) (where lay testimony that defendant did not appear "abnormal" by persons "who had very limited opportunity to observe" him had little value), reversed on other grounds 437 U.S. 1 (1978); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental state lacks probative value when a witness's "direct knowledge of the defendant is brief and superficial").[1]

These cases demonstrate that the judiciary, in general, and the Ninth Circuit, specifically, places little or no weight upon nervousness in making particular fact-based rulings

---

[1] In both Gall and Smith, mental state was the defense, and it was deemed error to have lay witnesses, without prior knowledge of the defendant opine that he appeared "not nervous," Gall, 231 F.3d at 292, or that "he did not appear abnormal," Smith, 437 F.2d at 540. Similarly, here, where a distinct mental state knowledge, is the determinative issue, permitting witnesses without expertise and with no prior knowledge of Mr. * to testify to the converse, that he was nervous, is equally erroneous.

under the lesser burdens of proof than the beyond a reasonable doubt standard applicable at trial. See United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001), implicitly overruled on other grounds by Muehler v. Mena, 544 U.S. 93 (2005) ("[N]ervousness during a traffic stop -- even . . . extreme nervousness . . . in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity."). For example, in Chavez-Valenzuela, Wald and Fernandez, nervousness was considered to be of little to no probative value in a probable cause/reasonable suspicion context where evidentiary standards are relaxed and where there is no need to consider the prejudicial impact of such evidence. Id.; Wald, 216 F.3d at 1227; Fernandez, 18 F.3d at 879.

Courts accord minimal significance to "nervousness" because they recognize that "nervousness" can have both an innocent and a guilty explanation; people confronted with law enforcement often exhibit signs of nervousness, without having done anything wrong. See Chavez-Valenzuela, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-abiders and criminals alike."); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); accord Wald, 216 F.3d at 1227 (it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by law enforcement); United States v. Wood, 106 F.3d 942, 947 (10th Cir. 1997) ("It is certainly not uncommon for most citizens--whether innocent or guilty--to exhibit signs of nervousness when confronted by law enforcement officer."); Fernandez, 18 F.3d at 879 (same); United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990) ("Nervousness, however, is 'a normal reaction to circumstances which one does not understand.' In the absence of facts which suggest that the defendant's nervousness or anxiety derives from an underlying consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty

knowledge");[2] United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir.1992) (same); United States v. Grant, 920 F.2d 376, 386 (6th Cir. 1990) ("[N]ervousness is entirely consistent with innocent behavior, especially at an airport where a traveler may be anticipating a long- awaited rendezvous with friends or family."); United States v. Andrews, 600 F.2d 563, 566 n.4 (6th Cir. 1979) (noting inconsistent rationales taken by government in explaining nervousness).

**B. Admission of Nervousness Testimony Violates Rules 701 & 704(b)**

Finally, such evidence should be excluded if it is couched, as it is this case, in terms of a law enforcement witness' personal opinion about Mr. Luna-Sanchez's behavior, i.e., "he was nervous." The agent's personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant and upon a very limited observation opportunity, violates Fed. R. Evid. 701. The rule provides that a lay witness can only testify to opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. In Gonzalez-Rivera v. INS, 22 F.3d 1441 (9th Cir. 1994), the Ninth Circuit held that testimony at a suppression hearing by an INS agent that an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence." Id. at 1447. There, when explored, the basis for the agent's testimony was that the individual appeared to have a "dry mouth." The court stated that absent reliable, objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings [which] do not provide any rational basis for separating out the illegal aliens from the American citizens and legal aliens." Id. Likewise the testimony in the instant case that Mr. Luna-Sanchez was "nervous" is nothing more than a subjective judgment based upon no prior knowledge of him and, similarly, should not be considered by the jury.

---

[2] In Diaz-Carreon, the Fifth Circuit held that the "nervousness" was linked to consciousness of guilt but only because, "*before being told that agents had discovered marijuana in the pickup truck,* Diaz-Carreon volunteered, 'If the truck is loaded, I didn't know about it.'" 915 F.2d at 954 (emphasis in original). Here, no such link between any amorphous "nervous" behavior and consciousness of guilt exists.

The only testimony that has been disclosed thus far regarding "nervousness" is that of Inspector Gilliland, the primary inspector. To the extent that any other witness with newly "refreshed" recollection is permitted to testify to some sort of "nervousness," that testimony would violate Rule 16. To the extent that any such testimony could be presented, it should be limited to a description of the physical or verbal manifestations directly observed or heard by the agent and should not encompass his or her own personal opinion that Mr. Luna-Sanchez was "nervous."

## VII. MR. LUNA-SANCHEZ'S ALLEGED PRIOR BAD ACTS MAY NOT BE USED AGAINST HIM

### A. The Government Has Not Complied with the Notice Requirements of Fed. R. Evid. 404(b).

Fed. R. Evid. 404(b) requires that the Government give notice of the "general nature" of any prior act evidence that it may seek to introduce. As of this writing, the Government has said only that it will seek to admit whatever prior convictions it can. Because the Government has provided no notice of the "general nature" of such evidence -- let alone discovery -- any such evidence should be excluded for failure to comply with Rule 404(b).

### B. 404(b) Evidence Must be Excluded.

In this country it is a settled and fundamental principle that persons charged with crimes must be tried for what they allegedly did, not for who they are. See United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985). The Ninth Circuit Court of Appeals has observed:

> Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that defendant engaged in other acts of wrongdoing.

Id.

No matter how vile or despicable a person may appear to be, he or she is entitled to a fair trial. Id. Constitutional provisions clearly provide that individuals may only be convicted for the crimes with which they are charged; they may not be subject to criminal conviction merely because they have a detestable or abhorrent background. Id. "Our entire system of justice would deteriorate if we did not jealously protect these constitutional safeguards for **all** citizens." South Dakota v.

Moeller, 548 N.W. 2d 465, 468 (S.D. 1996) (referring to prior acts evidence).

Mr. Luna-Sanchez moves to exclude evidence of his prior arrest for importation of marijuana in 9/12/05 in case no. 05 cr 1661-JAIT. First, Mr. Luna-Sanchez's prior arrest does not fit within the definition of 404(b) under existing Ninth Circuit law. See United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir.); cert. denied, 501 U.S. 1234 (1991) (Evidence of prior criminal conduct may be admitted to prove knowledge if only if all four prongs of four part test are met by the government). Second, if this court determines that Mr. Luna-Sanchez's prior arrest is admissible pursuant to 404(b), Mr. Luna-Sanchez maintains that the "probative value" of the prior conviction "is substantially outweighed by the danger of unfair prejudice" and the admission of such evidence would be a violation of both Mr. Luna-Sanchez's Fifth Amendment Due Process right, and his Sixth Amendment right to a fair trial.

**C. Mr. Luna-Sanchez' Prior Arrest In 2005 Is Irrelevant And Not Similar.**

The government will seek to introduce evidence of Mr. Luna-Sanchez's prior arrest under the guise of Rule 404(b), evidence of knowledge. The government's use of this evidence will be simply a veiled attempt to introduce propensity evidence and more importantly makes Mr. Luna-Sanchez' motion to severe the trial in counts 1 and 2 from counts 3 and 4 more imperative.

Fed. R. Evid. 404(b) states in relevant part -

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . .intent. . . [or] knowledge, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial.

Fed. R. Evid. 404(b). Rule 404(b) strictly forbids use of evidence of prior crimes or bad acts merely to prove bad character. United States v. Garcia-Orozco, 997 F.2d 1302, 1303-04 (9th Cir. 1993). The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and "may not be introduced unless the government establishes its relevance to an actual issue in the case." Id. at 1304 (citing United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985)). The purpose of Rule 404(b) is to "avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the

defendant is a bad man deserving of punishment." United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991).

However, evidence of prior criminal conduct may be admitted to prove knowledge under Rule 404(b) only if the government establishes (1) the other act evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) the other act is similar to the offense charged. Bibo-Rodriguez, 922 F.2d at 1400. When the government's theory of admission under Fed. R. Evid. 404(b) is knowledge, "the government must prove a logical connection between knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." United States v. Mayans, 17 F.3d 1174, 1181-82 (9th Cir. 1994) (citing United States v. Hernandez-Miranda, 601 F.2d 1104 (9th Cir. 1979)). Evidence of a prior conviction is not admissible where the evidence is that the defendant was convicted of the same offense as the current charge, but rather the prior conviction becomes relevant and admissible where the same offense was committed in a similar way. Id. The government must specifically articulate the basis for the admission of the evidence and why it is relevant.

Hernandez-Miranda, is a case indistinguishable from the instant case, and is an example of where the government failed to demonstrate the relevance of a prior conviction. In Hernandez-Miranda the defendant had been convicted of smuggling marijuana in a backpack across the border. See 601 F.2d at 1107. In the defendant's new case the allegations were that he was smuggling heroin across the border that had been concealed in a car. Id. at 1105. The Ninth Circuit determined it was error to permit introduction of the prior conviction because the government failed to articulate the relevance. Id. A "logical thread" between the two offenses was required. Id. at 1108. The Ninth Circuit determined that the prior offense was only relevant if "common human experience demonstrates that it is more probable than not that a person who has knowingly smuggled marijuana on his person will know of the presence of contraband concealed in a vehicle." Id. The common thread of just "smuggling" was not enough to bring the offense within the exception of Rule 404(b). Id. at 1108. More of a connection was required. The Ninth Circuit noted it would be reasonable to

infer that "a person who has knowingly smuggled marijuana in a backpack across the border on one occasion will know that he is carrying marijuana in his backpack when he is caught carrying marijuana in the same way as he crosses the border on a later occasion." Id. at 1108-09. However, the Ninth Circuit concluded that the sole similarity between the offenses was that contraband was being smuggled across the border, and because the way the prior act was committed was dissimilar to the current charged conduct, the prior conviction was irrelevant to the issue of knowledge. Id.

In principle, the instant case is indistinguishable from Hernandez-Miranda. In this case, as in Hernandez-Miranda, the sole similarity between the two offenses is simply that marijuana is being smuggled over the border. In the prior offense, Mr. Mr. Luna-Sanchez was the driver of a vehicle in which approximately 29 kilograms of marijuana was alleged found in a specially modified gas tank. In the instant case, Mr. Luna-Sanchez was the driver of a vehicle in which only 3.94 kilograms arguably a personal use amount of marijuana was simply placed under the hood and under the dashboard. Mr. Luna-Sanchez's prior offense was committed in a totally different fashion than that alleged in the instant case. In this case, there is no "logical thread" between the two offenses as required by Hernandez-Miranda. Although the evidence of Mr. Mr. Luna-Sanchez's prior conviction may be relevant to demonstrate his predisposition to the commission of the instant offense, this is an impermissible ground for introduction of the evidence. Hernandez-Miranda, 601 F.2d at 1108 (impermissible to allow 404(b) evidence based upon the theory that a person who has shown an inclination to smuggle contraband across the border on one occasion may be inclined to do so on another).

What is undeniable is only that Mr. Luna-Sanchez was previously arrested, not convicted for driving a car in which marijuana was secreted in a specifically modified gas tank. The prior arrest in 2005 is not relevant to demonstrate knowledge because the common thread of "smuggling" is not enough to bring the offense within the exception of Rule 404(b). Id. at 1108. Had marijuana from the 2007 offense been concealed in a specially built compartment, Mr. Luna-Sanchez's vehicle then under Hernandez-Miranda, Rubio-Villareal, Bibo-Rodriguez, and Longoria, the evidence would be admissible. However, the facts in the instant cases are not so similar as to allow admissibility of the

2005 arrest in the 2007 or vice versa. Therefore, the government should be precluded from introducing the evidence.

**D. Mr. Luna-Sanchez's Prior Arrests Should Be Excluded Under 403.**

Even when all of the other requirements of "extrinsic acts" evidence are met, the evidence may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. Fed. R. Evid. 403. Rule 403 provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." As to a criminal defendant, Rule 403's term "unfair prejudice" speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on an improper basis rather than on proof specific to the offense charged. Old Chief, 519 U.S. at 173 (9th Cir. 1997). Such improper grounds certainly include generalizing from a past bad act that a defendant is by propensity the probable perpetrator of the current crime. Id. In this case, evidence of Mr. Luna-Sanchez's prior arrest may lead the jury to a conviction based upon an improper basis, propensity. This result is exactly what Rule 403 forbids and evidence of Mr. Luna-Sanchez's prior conviction should be excluded.

**IX. MR. LUNA-SANCHEZ'S ALLEGED PRIOR CONVICTIONS SHOULD NOT BE USED TO IMPEACH UNDER RULE 609.**

According to the rap sheet produced by the Government, Mr. Luna-Sanchez suffered at a prior felony conviction in 1998 for possession with intent to distribute heroin. It is anticipated that if Mr. Mr. Luna-Sanchez testifies, the Government will attempt to introduce prior convictions as impeachment material under Rule 609(a)(1) of the Federal Rules of Evidence. However, even under Rule 609(a)(1), such evidence is inadmissible.

Rule 609 provides:

> (a) General rule. For the purpose of attacking the credibility of a witness, (1)evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs the prejudicial effect to the accused.

Fed. R. Evid. 609(a)(1) (emphasis added). The plain language of Rule 609(a)(1) and the 1990 Advisory Committee Note clearly indicate that the standard governing the admissibility of a criminal defendant's prior felony conviction is more stringent than the standard governing the admissibility of prior felony convictions of other witnesses. See 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence § 609[04], at 609-42 (1996) ("The amended Rule 609(a)(1) was intended to resolve the problems of fairness by treating criminal defendants differently from other witnesses. The Advisory Committee was aware of the 'unique risk of prejudice' faced by criminal defendants who want to testify on their own behalf: that prior conviction evidence will be 'misused by a jury as propensity evidence.'") (quoting 1990 Advisory Committee Note). Specifically, in cases where the witness is not a criminal defendant, it is presumed that the prior conviction is admissible and therefore the party seeking exclusion has the burden of showing that the probative value of the prior conviction "is substantially outweighed by the danger of unfair prejudice" under Rule 403. Such a standard, however, does not apply to the prior convictions of testifying criminal defendants. Rather, there is a presumption against the admission of a criminal defendant's prior conviction and "[t]he Government bears the burden of showing . . . that the proffered evidence's probative value substantially outweighs its prejudicial effect." United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir.) (emphasis added), cert. denied 516 U.S. 878 (1995).

Whether the Government has successfully rebutted the presumption against admissibility depends on the balancing of five factors outlined by the Ninth Circuit in United States v. Cook, 608 F.2d 1175 (9th Cir. 1979) (en banc), overruled on other grounds in Luce v. United States, 469 U.S. 38 (1984). These factors are: (1) the impeachment value of the prior conviction; (2) the temporal relationship between the conviction and the subsequent history of the defendant; (3) the similarity between the prior offense and the offense charged; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. Cook, 608 F.2d at 1185 n.8 (citing Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied 390 U.S. 1029 (1968)). After evaluating these five factors, it is clear that the Government cannot show that the probative value of Mr. Luna-Sanchez's prior convictions substantially outweighs its prejudicial effect so as to rebut the

presumption against admissibility.

The Government cannot meet its burden of showing that the probative value of Mr. Luna-Sanchez's prior conviction substantially outweighs their prejudicial effect. It should also be noted that Mr. Luna-Sanchez does not intend to offer any character evidence, and does not intend "to misrepresent his character or to testify falsely as to his prior criminal record." United States v. Bagley, 772 F.2d 482, 488 (9th Cir. 1985) (holding that district court abused its discretion in admitting prior conviction). As a result, his prior convictions should be excluded.

X. **AGENTS SHOULD NOT BE ALLOWED TO TESTIFY ABOUT THE TRUTHFULNESS OF MR. LUNA-SANCHEZ'S STATEMENTS AT THE TIME OF THE ARREST**

Credibility is a matter to be decided by the jury. Any testimony by any agents post-arrest statement by Mr. Luna-Sanchez was untruthful is irrelevant and inadmissible under Ninth Circuit precedent.

The Ninth Circuit has held that it is reversible error to permit a Border Patrol Officer to testify over objection that another agent was telling the truth. See United States v. Sanchez-Lima, 161 F.3d 545 (9th Cir. 1998). In Sanchez-Lima, a Border Patrol Officer testified that "based on his training and experience, Agent Kermes [an agent who testified before the jury] was telling the truth" during his post incident interview. Id. at 548. The Ninth Circuit noted that "[t]his court has already held that opinion evidence regarding a witness' credibility is inadmissible." Id. (citing United States v. Awkard, 597 F.2d 667, 671 (9th Cir. 1979)). The Sanchez-Lima Court held that it is error to permit a witness to testify over objection that another witness's extra-judicial statements were truthful. Id.

Allowing any agent to testify about the truthfulness of Mr. Luna-Sanchez's statements would qualify as reversible error as well. Explicit Ninth Circuit precedent, logically indistinguishable from the instant case, bars the use of this kind of evidence against the defendant. Therefore, Mr. Luna-Sanchez requests that government agents not be permitted to testify about his opinions of the truthfulness of Mr. Mr. Luna-Sanchez's post-arrest statements.

**XI. THIS COURT SHOULD EXCLUDE INADMISSIBLE HEARSAY OF WITNESSES**

Crawford v. Washington, 541 U.S. 36 (2004), squarely holds, pursuant to the Sixth Amendment, that pre-trial, testimonial statements may not be admitted against a defendant at trial where the defendant has not had a chance to cross examine the declarant. Id. at 68. This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." Id. at 40. As such, this case overturns the Supreme Court's own precedent in Ohio v. Roberts, 448 U.S. 56 (1980).

The Confrontation Clause does not permit testimonial statements to be admitted at trial without the "constitutionally prescribed method of determining reliability," *i.e.*, confrontation. Id. at 62. In other words, [w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for cross-examination." Id. at 54. In this case, Mr. Luna-Sanchez was never given an opportunity to cross examine either of the material witnesses before they were deported. As such, if the material witnesses are unavailable for trial, any statements taken from them are inadmissible under the plain reading of the Sixth Amendment and the clear holding of Crawford. In the instant case the government should not be allowed to present any evidence attributable to Agent Gilliland. He was the inspector at primary, but is now unavailable due to his incarceration after a conviction and sentence of five years for smuggling undocumented people in case no. 03CR1336JAH.

**XII. MR. LUNA-SANCHEZ REQUESTS ATTORNEY CONDUCTED VOIR DIRE**

Pursuant to Rule 24(a) of the Fed. R. Crim. P. defense counsel requests the opportunity to personally voir dire the prospective jurors. This request is made so that Mr. Flores-Blanco may exercise his right to be tried fairly by an impartial jury in accordance with the Fifth and Sixth Amendments to the United States Constitution.

If the court is not inclined to permit attorney conducted voir dire, Mr. Flores-Blanco will submit questions as proposed voir dire questions.

**XIII.**
**CONCLUSION**

For the above stated reasons, Mr. Aurelio Luna-Sanchez asks the court to grant his motions.

In addition, because the government has not yet provided a trial memo, Mr. Aurelio Luna-Sanchez may need to file addition motions *in limine*.

Respectfully submitted,

Dated: April 30, 2008

**SYLVIA BAIZ**
Attorney for Defendant Aurelio Luna-Sanchez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. JEFFREY T. MILLER**)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>**AURELIO LUNA-SANCHEZ,**<br>Defendant. | Criminal No. 08-CR-0141 JM<br><br>**PROOF OF SERVICE** |

I, the undersigned, say:

1. I am over eighteen years of age, a resident of the County of San Diego, State of California, and not a party to the within action;

2. My business address is 964 Fifth Ave., Suite 214, San Diego, California 92101;

3. I served the within **NOTICE OF MOTION AND MOTIONS IN LIMINE**, on opposing counsel by causing to be delivered an original and two copies thereof to the Office of the Clerk, 940 Front Street, San Diego, California 92189, one copy of which is to be transmitted by the Clerk to the U.S. Attorney's Office in compliance with Local Rule 415-4(a);

4. I caused additional cop(ies) to be delivered to defendant.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 30, 2008 at San Diego, California.

___/s/ Sylvia Baiz__________
Sylvia Baiz