KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AURELIO LUNA-SANCHEZ,<br><br>Defendant. | Criminal Case No. 08CR0141-JM<br><br>Date: May 9, 2008<br>Time: 1:30 p.m.<br><br>The Honorable Jeffrey T. Miller<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE**<br><br>**TOGETHER WITH A STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Motions In Limine to (1) Compel Further Discovery; (2) Sever the Trials of the Counts in Indictment; (3) Dismiss the Indictment Due to Government Destruction of Narcotics Evidence; (4) Suppress Evidence; (5) Exclude Expert Testimony; (6) Exclude Evidence of Nervousness; (7) Exclude 404(b) Evidence; (8) Exclude 609 Evidence; (9) Apply the Rule of Completeness; (10) Exclude Testimony As to Truthfulness of Defendant's Statements At Arrest; (11) Exclude Inadmissible Hearsay; and (12) Admit Attorney Conducted Voir Dire. This response in opposition is based on the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On January 16, 2008, a federal grand jury in the Southern District of California returned a four-count indictment against Defendant AURELIO LUNA-SANCHEZ ("Defendant"). The Indictment charges Defendant with one count of importing approximately 29.25 kilograms (64.35 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, one count of possessing approximately 29.25 kilograms (64.35 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), one count of importing approximately 3.94 kilograms (8.67 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, and one count of possessing approximately 3.94 kilograms (8.67 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On January 17, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty. On February 15, 2008, Defendant filed his discovery motions and motions to suppress statements and dismiss the Indictment. On March 28, 2008, the Court denied Defendant's motions to dismiss the Indictment due to an alleged violation of the Speedy Trial Act and due to alleged vindictive prosecution. On April 30, 2008, Defendant filed his motions in limine. On May 9, 2008, the Court will hear all motions, including motions in limine. The trial is set for May 12, 2008 at 9:00 a.m. As such, the United States files the following response in opposition to Defendant's motions in limine.

## II

## STATEMENT OF FACTS

### A. OFFENSE CONDUCT IN 2005

#### 1. Events Leading to Seizure of Marijuana

On September 12, 2005, at approximately 12:36 a.m., Defendant drove a green, 1994 Jeep Grand Cherokee bearing California license plate number "5PCM316" into the vehicle primary lanes at the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. Defendant and the car were referred to the secondary inspection area.

In the secondary inspection area, Officer Cisneros was on duty at approximately 12:40 a.m., when Defendant drove the green 1994 Jeep Grand Cherokee into the lot. Officer Cisneros notified Canine Enforcement Officer Corvino to inspect the vehicle utilizing her narcotics detector dog. The dog alerted to the spare tire of the vehicle. Officer Corvino notified Officer Cisneros of the alert, and Officer

Cisneros escorted Defendant to the security office. A search of the spare tire revealed eight packages containing a green leafy substance, which field-tested positive for marijuana. Officer Cisneros called American Towing to have a certified mechanic remove the gas tank. Thereafter, the gas tank was removed from the vehicle, and a subsequent search revealed twenty-four packages of a green leafy substance, which field-tested positive for marijuana. The thirty-two packages of marijuana weighed a total of 29.25 kilograms. Although the gas tank had six gallons of gas in it, the gas gauge read empty.

Defendant was arrested. Defendant had $1,023 in his possession. The only clothes found in the vehicle was a plaid shirt, a pair of blue jeans, and a pair of tennis shoes.

Gildardo Carillo is the registered owner of the vehicle driven by Defendant. Carillo was arrested on June 9, 2005 for smuggling 54.80 kilograms of marijuana into the United States. He was sentenced to 121 days in San Diego County Jail. Carillo was in custody on the date of Defendant's arrest.

**2. Post-Miranda Statement**

At approximately 4:00 a.m., on September 12, 2005, United States Immigration and Customs Enforcement (ICE) agents advised Defendant was of his Miranda rights. Defendant acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant told agents that he had recently moved from Sylmar, California to Sun Valley, California, but could not remember his address. He stated that he placed all of his belongings in storage and traveled to Michoacan, Mexico. He claimed that he left for Mexico on the first or second of September and returned to the United States on September 10. Defendant stated that he sold a Jeep Wrangler in Michoacan for $3,500. He then returned to the United States on September 10 and returned to Tijuana, Mexico, the next day driving his Volkswagen Golf. Defendant left the Volkswagen Golf in Mexico to test drive the 1994 Jeep Grand Cherokee.

Defendant indicated that he was driving to Sun Valley with the Jeep Grand Cherokee and if he liked it, he was going to purchase it for $2,700. Defendant claimed that the Boost mobile phone in his possession was from the company he worked for - AVM Woodworking in Van Nuys, California. Defendant stated that this company paid for the Boost mobile phone.

/ /

/ /

**B. <u>OFFENSE CONDUCT IN 2007</u>**

**1. <u>Events Leading to Seizure of Methamphetamine in August 2007</u>**

On August 26, 2007, at approximately 7:10 p.m., Defendant drove a 1995 Honda Accord bearing California license plate number "5YNC208" into the vehicle primary lanes at the San Ysidro, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. The Untied States Customs and Border Protection Officer Velasco was working the primary lane when Defendant approached in the vehicle. Defendant presented his valid U.S. passport and claimed to be a U.S. citizen. Defendant told Officer Velasco that he had been in Mexico to visit his family and that the car belonged to his wife. During Officer Velasco's inspection of the car, he discovered clear sandwich bags hidden behind the glove box that contained a "joint" and glass pipes. The car was referred to the secondary lot.

In the secondary inspection area, Officer Madero field tested the green leafy substance in the first sandwich bag that was found behind the glove box, and it field-tested positive for marijuana. Another sandwich bag was found behind the glove box, which contained a white, crystalline substance that was separated into six personal use "baggies." Officer Madero tested the white, crystalline substance, which field-tested positive for methamphetamine. The marijuana weighed approximately 2.0 grams and the methamphetamine weighed approximately 600 milligrams.

Defendant was processed administratively. Defendant signed the petition for remission or mitigation of forfeitures and penalties. In pleading for Customs to reduce the fine, Defendant handwrote on the form that he was sorry for what happened and that the truth was it was easy for him to bring the drugs not knowing the crime or problem that it would cause. Customs assessed a civil fine of $5,000, which was later reduced to $500. Defendant signed an agreement to pay the monetary penalty. The car driven by Defendant was registered to a women, that was later determined not to be his wife. Customs seized the car and released Defendant.

**<u>2</u>. <u>Events Leading to Seizure of Marijuana in December 2007</u>**

On December 4, 2007, at approximately 5:30 a.m., Defendant drove a tan, 1993 Lexus S300 bearing California license plate number "6BCM522" into the vehicle primary lanes at the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. The United States Customs and Border Protection Officer Renner was working the primary inspection lane when Defendant approached in the vehicle. Defendant said he was a United States citizen and presented a

valid U.S. Passport. Officer Renner noticed that the license plate appeared new. Defendant stated that he was not bringing anything back from Mexico. Defendant told Officer Renner that he owned the vehicle and that he purchased it 10 days ago. However, when Defendant's hands were shaking as he handed the vehicle's registration to Officer Renner. The title, which was dated November 18, 2007, showed that the vehicle was actually owned by "Francisco Aguilar," not Defendant. Defendant told Officer Renner that he lived in Tijuana, Mexico. Officer Renner swiped Defendant's passport and the computer-check indicated that Defendant had previously smuggled narcotics into the United States. Officer Renner referred the vehicle to the secondary inspection area.

In the secondary inspection area, Officer Boutwell received another negative declaration from Defendant. Canine Enforcement Officer Beyke screened the vehicle with her narcotics detector dog. The dog positively alerted to the driver's side quarter panel. A further inspection of the vehicle by Officer Becerra revealed two packages in the engine compartment. The packages contained a green, leafy substance that field-tested positive for marijuana. Defendant was arrested and escorted to the security office. The two packages of marijuana weighed approximately 2.32 kilograms. Defendant was arrested and escorted to the security office.

At approximately 2:20 p.m., Officer Moore screened the vehicle again with his narcotics detector dog. The dog positively alerted to the driver's side dashboard area. Officer Moore searched underneath the dashboard and saw an additional package wrapped in gray tape. Officer Becerra seized the package, which contained a green, leafy substance that tested positive for marijuana. The one package of marijuana weighed approximately 1.62 kilograms. As such, the three packages seized from the vehicle weighed a total of 3.94 kilograms (or 8.67 pounds).

**3. <u>Post-Miranda Statement in December 2007</u>**

At approximately 9:45 a.m., on December 4, 2007, ICE agents advised Defendant was of his <u>Miranda</u> rights. Defendant acknowledged that he understood his <u>Miranda</u> rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant denied knowledge of the drugs in the vehicle, and told agents that he was on his way to San Felipe, Mexico when his vehicle broke down in Tijuana. Even though Defendant told agents that he was a mechanic, Defendant claimed that he had another mechanic in Mexico look at the vehicle. He believes this Mexican mechanic's name is also "Aurelio" and he must have put the drugs in the vehicle.

Defendant said he lives in San Fernando. Defendant then changed his story about going to San Felipe, Mexico, and told agents that he traveled to Tijuana, Mexico, to visit his daughter. However, Defendant had told agents earlier that his daughter lived in Jalisco, Mexico, and not Tijuana. Defendant next claimed that he was on his way to Chula Vista courthouse to deal with a traffic violation.

After making the several inconsistent statements above, Defendant told agents that he purchased the Lexus two weeks ago in San Fernando, Mexico, for $3,000 from a person he knew as "Pancho," who Defendant also claimed was the registered owner, "Francisco Aguilar."

Toward the end of the interview, Defendant asked agents what benefit he would received if he were to tell them something different than what he already stated. The interview concluded.

### C. DEFENDANT'S CRIMINAL HISTORY

Defendant is a repeat drug offender. On February 20, 1998, Defendant pled guilty and was convicted, in the United States District Court for the Southern District of Texas, of possession with the intent to distribute less than 1 kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1), and received a sentence of 37-months prison and 3 years probation.

## III

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE COURT SHOULD DENY THE MOTION TO COMPEL DISCOVERY

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008. To date, the United States has produced 350 pages of discovery to Defendant. This discovery includes the reports of the arresting agents, inspector reports, evidence seizure documents, a criminal history report, and photographs taken of the vehicle and the contraband at the time of arrest. The United States recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The United States has complied and will continue to comply with its discovery obligations going forward. As discoverable evidence becomes available to the United States, the United States will continue to produce it to Defendant. To date, the United States has received **no** reciprocal discovery.

Thus, the United States respectfully requests that the Court deny the motion as moot, absent a specific showing by Defendant as to what, if anything, he believes has not been discovered that is discoverable under Brady, Jencks, and the Federal Rules of Criminal Procedure.

## B. THE COURT SHOULD DENY DEFENDANT'S MOTION TO SEVER

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008. Defendant contends that the district court should sever Counts 1 and 2 ("September 2005 Counts") from Counts 3 and 4 ("December 2007 Counts") because he will be unduly prejudiced. While Defendant invokes the issue of prejudicial joinder governed by Fed. R. Crim. P. 14(a), he also asks the Court to apply the misjoinder rule in Fed. R. Crim. P. 8(a) that addresses defects in the Indictment. Regardless of whether this Court examines the issue under Rule 14 or Rule 8, the Court should not sever the September 2005 Counts from the December 2007 Counts for the reasons stated below.

Counts should only be severed if the "joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled the exercise of the court's discretion to sever." United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976): United States v. Whitworth, 856 F.2d 1268, 1277 (9th Cir. 1986). The phrase "manifestly prejudicial" is defined as "of such magnitude that the defendant's right to a fair trial was abridged." United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir. 1986). Severance is not required where the evidence of each count would be admissible at separate trials. United States v. Douglass, 780 F.2d 1472, 1479 (9th Cir. 1986) (emphasis added). Nor is severance required where the jury "can reasonably be expected to compartmentalize the evidence so that evidence of one crime does not taint the jury's consideration of the another crime." United States v. Rousseau, 257 F.3d 925 (9th Cir. 2001) (noting that joinder of two separate felon in possession of firearm charge permissible, holding that "juries are pressured to follow their instructions" when the court" charges the jury on the elements of each count separately, its action militates against a finding of prejudice."); see also United States v. Lopez, 477 F.3d 1110 (9th Cir. 2007) (holding that the district court did not abuse its discretion by refusing to sever two counts–possession with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking offense).

Here, the September 2005 Counts are part and parcel to the December 2007 Counts because the September 2005 Counts are admissible as evidence under Rule 404(b) of the Federal Rules of Evidence in a trial on the December 2007 Counts, and the December 2007 Counts are admissible as evidence under Rule 404(b) of the Federal Rules of Evidence in a trial on the September 2005 Counts. As such, joinder is appropriate and Defendant's motion to sever should be denied.

Defendant argues that he would suffer extreme prejudice if the September 2005 Counts and December 2007 Counts were joined. Concerns of judicial economy strongly support the denial of a motion to sever. See United States v. Lopez, 477 F.3d 1110, 1117 (9th Cir. 2007). Each of the alleged offenses in the September 2005 Counts and December 2007 Counts arose out of the same act or transaction and there is significant overlap in the evidence for all charges. See Fed. R. Crim. P. 8(a) (permitting joinder of multiple offenses if the offenses "are of the same or similar character, or are based on the same act or transaction...") ; see also United States v. Lopez, 477 F.3d 1110, 1117 (9th Cir. 2007). The United States must prove the same elements beyond a reasonable doubt for the importation counts and for the possession with intent to distribute counts.[1/] Thus, separating any charge from the others would result in duplicative presentation of evidence. The burden on judicial resources that would result from hearing the charges and evidence against Defendant in multiple trials outweighs any limited prejudice Defendant may experience in a single trial for all charges. See United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976).

For all of the foregoing reasons, the United States respectfully requests that the Court deny Defendant's motion to sever the September Counts and December Counts.

**C. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO DESTRUCTION OF NARCOTICS EVIDENCE**

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008. Defendant contends that the indictment should be dismissed because the bulk marijuana, associated with the September 2005 Counts, was destroyed. It should be noted that the argument that the destruction of the bulk marijuana is somehow a Brady violation or a Due Process violation lacks merit. Defendant has not met his burden of establishing bad faith in the destruction of the marijuana in 2005. [See Def. MIL, Ex. C (partial transcript) (noting that the government paralegal specialist that ordered the bulk marijuana destroyed in late October 2005 did so with the understanding that it would be destroyed at the end of November 2005; government paralegal specialist received Judge Houston's

---

[1/] The elements of importation of marijuana are: (1) the defendant knowingly brought marijuana into the United States; and (2) the defendant knew that it was marijuana or some other prohibited drug. See 9th Cir. Crim. Jury Instr. § 9.27 (2007). The elements of possession with intent to distribute marijuana are: (1) the defendant knowingly and intentionally possessed marijuana in a measurable and detectable amount; and (2) the defendant possessed the marijuana with the intent to deliver it to another person. See 9th Cir. Crim. Jury Instr. § 9.17 (2007).

order to preserve the bulk marijuana on November 7, 2005, after the time in which it had been unexpectedly destroyed).] The marijuana was not destroyed due to any malicious intent or negligence by the United States, but as a result of an earlier than expected destruction date and of delay in getting the signed court order to the government paralegal specialist working in Fines, Penalties and Forfeitures. Even if the marijuana had not been inadvertently destroyed in 2005, the bulk marijuana associated with the September 2005 Counts would not still be available in 2008. [See Def. MIL, Ex. A (Judge Houston's Order indicates: the marijuana was ordered to be preserved until December 2, 2005 or further order of the Court).] As such, the United States respectfully requests that the Court deny Defendant's motion to dismiss the indictment because the destruction of the bulk marijuana in 2005 was not the result of bad faith and even if there was strict compliance with the Court order, the marijuana would have been destroyed shortly after December 2, 2005, making it unavailable for a trial in 2008.

**D. THE COURT SHOULD DENY THE MOTION TO SUPPRESS EVIDENCE**

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008. Defendant moves to suppress evidence seized from a search of his cellular phones that occurred incident to his arrest. The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. Amend. IV. "A search incident to arrest" is an exception to the general rule against warrantless searches. See United States v. Hudson, 100 F.3d 1409, 1419 (9th Cir. 1996). "A search incident to arrest must be conducted at about the same time as the arrest." Id. The cellular telephone has been considered part of the person that can be searched incident to arrest. See United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007) (holding that police officer's search of cell phone even after moving defendant from scene of arrest to his residence was "still substantially contemporaneous with his arrest" and, therefore, permissible); see also United States v. Chadwick, 433 U.S. 1 (1977) (holding that police may search a container within a vehicle without a warrant if they have probable cause to believe the container itself holds contraband or evidence). Recently, the Ninth Circuit held that reasonable suspicion was not needed for customs officials to search a laptop computer or other personal electronic storage devices at the border. United States v. Arnold, – F.3d –, 2008 WL 1776525 (9th Cir., Apr. 21, 2008); see also United States v. Cortez-Rocha, 394 F.3d 1115, 1122 (9th Cir. 2005) (refusing to fashion a "least restrictive means test" in the border search context).

Defendant's motion to suppress evidence should be denied without an evidentiary hearing because he failed to allege a specific factual dispute and failed to support his contentions with a sworn declaration as required by Crim LR 47.1(g). Without articulating the phone from which evidence was unlawfully seized, the date upon which the unlawful seizure occurred (the indictment charges crimes in 2005 and 2007), the specific facts in dispute and the specific evidence that was unlawfully seized that Defendant seeks to suppress, the United States contends that Defendant has failed to allege a violation of the Fourth Amendment. Even if Defendant could articulate this missing information, the search of a cell phone, which is a "personal electronic storage device", at the border, which is where Defendant was arrested on the dates alleged in the indictment, complied with the Fourth Amendment as recently held by the Ninth Circuit in Arnold.

**E. THE COURT SHOULD ADMIT EXPERT TESTIMONY**

On April 29, 2008, the United States provided written notice of its intent to call an expert in the value of the substance found in the cars driven by Defendant, Immigration and Customs Enforcement Special Agent Christopher Lindung and/or Jason Palmer, and two DEA lab chemists, Drug Enforcement Agency Chemist Sylvia Train-Brousseau and Lisa Kitlinksi, as experts to testify to the identity of the substances found in the cars driven by Defendant. Rule 16 does not set forth a time frame for disclosure, simply indicating that such notice must be given pretrial. Since the trial date is not yet upon us, the United States is well within Rule 16.

Furthermore, Defendant can show no prejudice from any alleged Rule 16 violation. A violation of Rule 16 does not itself require reversal, or even exclusion of the affected testimony. See United States v. Figueroa-Lopez, 125 F.3d 1241, 1247 (9th Cir. 1997). The defense identified, presumably based on experience in similar cases, exactly the nature and scope of the expert testimony the United States seeks to admit. [See Def. MIL at 13-16.] The defense has not identified any prejudice resulting from the supposed Rule 16 violation; Defendant will have every opportunity to cross-examine the experts at trial and inquire regarding the basis of the experts' testimony. As such, the United States respectfully requests that the Court deny Defendant's motion as moot.

/ /

/ /

**F. THE COURT SHOULD DENY DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF DEFENDANT'S DEMEANOR**

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008. Evidence regarding the Defendant's demeanor and physical appearance is admissible. The United States does not intend to illicit testimony from its witnesses that the Defendant was "nervous."

**G. THE COURT SHOULD DENY DEFENDANT'S MOTION TO EXCLUDE EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 404(b) AND 609**

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008 and its Supplemental Motion in Limine filed on May 2, 2008. Evidence of Defendant's prior acts on September 12, 2005, August 26, 2007, and December 4, 2007 regarding the importation of drugs and possession with intent to distribute drugs should be admitted in the United States' case-in-chief pursuant to Rule 404(b) to prove knowledge, plan, intent, opportunity, and lack of mistake or accident. Evidence of Defendant's prior conviction for possession with intent to distribute less than one kilogram of heroin is admissible under Rule 609. As such, the United States respectfully requests the Court do deny Defendant's motions to exclude 404(b) and 609 evidence.

**H. THE COURT SHOULD DENY DEFENDANT'S MOTION TO EXCLUDE OPINION EVIDENCE REGARDING A WITNESSES' CREDIBILITY**

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008. The United States does not intend to introduce any opinion evidence regarding a witnesses' credibility. As such, the United States respectfully requests that the Court deny Defendant's motion to exclude evidence as moot.

**I. THE COURT SHOULD DENY DEFENDANT'S MOTION TO EXCLUDE INADMISSIBLE HEARSAY OF WITNESSES**

The United States fully incorporates its position set forth in its Motions in Limine filed on April 25, 2008. The United States does not intend to introduce inadmissible hearsay of other witnesses. As such, the United States respectfully requests that the Court deny Defendant's motion as moot.

**J. MOTION FOR ATTORNEY CONDUCT VOIR DIRE**

The United States does not oppose this Motion and defers to the Court. If the Court permits each party to conduct voir dire, the United States requests that each party be given the same amount of time.

/ /

## IV

## CONCLUSION

For the foregoing reasons, the United States respectfully asks that the Court to deny Defendant's motions in limine.[2/]

DATED: May 2, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

---

[2/] Defendant's caption to his motions in limine contains a reference to a motion to apply the rule of completeness, however, his motion contains no memorandum of points and authorities in support of his motion. The Rule of Completeness instructs that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106; see also Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988) (noting that the rule of completeness aims to avoid misrepresentation of a statement by requiring presentation of those portions of the statement that are relevant to understanding its meaning.). Here, there are no recorded post-arrest statements. Without understanding the context in which Defendant raises this issue, the United States respectfully reserves its right to object to this motion at a later date.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AURELIO LUNA-SANCHEZ,<br>Defendant. | ) | Criminal Case No. 08CR0141-JM<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the **United States' Response in Opposition to Defendant's Motion <u>In</u> <u>Limine</u>** together with a statement of facts and memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Sylvia Baiz
Law Office of Sylvia Baiz
964 Fifth Avenue, Suite 214
San Diego, California 92101
*Lead Attorney for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2008.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney