KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AURELIO LUNA-SANCHEZ, JR.,<br><br>Defendant. | Criminal Case No. 08CR0141-JM<br><br>**THE UNITED STATES' TRIAL MEMORANDUM**<br><br>Date: September 15, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 16, 5th Floor<br>Judge: Honorable Jeffrey T. Miller |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant U.S. Attorneys, hereby files its Trial Memorandum.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

# I

## STATEMENT OF THE CASE

### A. INDICTMENT

On January 16, 2008, a federal grand jury in the Southern District of California returned a four-count indictment against Defendant Aurelio Luna-Sanchez, Jr. ("Defendant"). The indictment charges Defendant with one count of importing approximately 29.25 kilograms (64.35 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, one count of possessing approximately 29.25 kilograms (64.35 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), one count of importing approximately 3.94 kilograms (8.67 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, and one count of possessing approximately 3.94 kilograms (8.67 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On May 7, 2008, a federal grand jury returned a Superseding Indictment, adding a fifth count, charging Defendant with importation of a mixture and substance containing a detectable amount, to wit: approximately 600 milligrams of methamphetamine, in violation of 21 U.S.C. §§ 952 & 960. On September 15, 2008, the United States will file an Information and Notice pursuant to 21 U.S.C. § 851. A copy of the Information and Notice was previously provided to Defendant on August 22, 2008.

### B. TRIAL STATUS

The case is currently set for trial on September 15, 2008, at 9:00 a.m., before the Honorable Jeffrey T. Miller. The United States' case-in-chief is expected to last two to three days.

### C. STATUS OF COUNSEL

Defendant was represented by appointed counsel, Sylvia Baiz. On May 12, 2008, at Defendant's request, the Court relieved Ms. Baiz and appointed James Gleave as counsel.

### D. CUSTODY STATUS

Defendant is in custody.

### E. INTERPRETER

Neither the United States nor Defendant will need an interpreter for any witnesses.

### F. JURY WAIVER

Defendant has not waived trial by jury.

**G. PRETRIAL MOTIONS**

On February 15, 2008, Defendant filed motions to (1) dismiss the indictment due to a violation of the Speedy Trial Act; (2) dismiss the Indictment due to vindictive prosecution; (3) compel discovery; and (4) preserve evidence. On February 22, 2008, the United States filed its response in opposition to Defendant's motions, along with its motions for reciprocal discovery. The Court denied Defendant's motions to dismiss the indictment and granted the United States' motion for reciprocal discovery. The Court continued all other motions to the hearing on motions in limine on September 5, 2008.

**H. MOTIONS *IN LIMINE***

On April 25, 2008, the United States filed the following motions in limine to: (1) exclude all witnesses except the case agent; (2) admit expert testimony; (3) admit demeanor evidence; (4) admit 404(b) evidence; (5) admit 609 evidence; (6) limit character evidence; (7) preclude expert testimony by defense; (8) preclude evidence of duress and necessity; (9) prohibit reference to Defendant's health, finances, education and potential punishment; (10) prohibit self-serving hearsay; and (11) renewed motion for reciprocal discovery. On April 30, 2008, Defendant filed his motions in limine. On May 2, 2008, the United States filed a supplemental motion in limine to admit additional 404(b) evidence. On May 2, 2008, the United States filed a response in opposition to Defendant's motions in limine.

On September 5, 2008, the Court heard all outstanding motions, including the parties' motions in limine. The Court held granted motions to (1) exclude witnesses other than the case agent, (2) admit evidence of demeanor, (3) exclude self-serving hearsay, and (4) prohibit reference to Defendant's health, finances, education and potential punishment. The Court denied motions to (1) limit character evidence and (2) admit 609 evidence. The Court granted in part/denied in part the motion to admit expert testimony for the United States.

**I. STIPULATIONS**

The parties have not agreed to any stipulations.

**J. DISCOVERY**

The United States has complied with its discovery obligations, and has produced approximately 440 pages of discovery. Defendant has not provided any reciprocal discovery concerning his proposed defense.

## II

## STATEMENT OF FACTS

### A. OFFENSE CONDUCT ON SEPTEMBER 12, 2005

#### 1. Events Leading to Seizure of Marijuana

On September 12, 2005, at approximately 12:36 a.m., Defendant drove a green, 1994 Jeep Grand Cherokee bearing California license plate number "5PCM316" into the vehicle primary lanes at the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. Defendant and the car were referred to the secondary inspection area.

In the secondary inspection area, Officer Cisneros was on duty at approximately 12:40 a.m., when Defendant drove the green 1994 Jeep Grand Cherokee into the lot. Officer Cisneros notified Canine Enforcement Officer Corvino to inspect the vehicle utilizing her narcotics detector dog. The dog alerted to the spare tire of the vehicle. Officer Corvino notified Officer Cisneros of the alert, and Officer Cisneros escorted Defendant to the security office. A search of the spare tire revealed eight packages containing a green leafy substance, which field-tested positive for marijuana. Officer Cisneros called American Towing to have a certified mechanic remove the gas tank. Thereafter, the gas tank was removed from the vehicle, and a subsequent search revealed twenty-four packages of a green leafy substance, which field-tested positive for marijuana. The thirty-two packages of marijuana weighed a total of 29.25 kilograms. Although the gas tank had six gallons of gas in it, the gas gauge read empty.

Defendant was arrested. Defendant had $1,023 in his possession. The only clothes found in the vehicle was a plaid shirt, a pair of blue jeans, and a pair of tennis shoes.

Gildardo Carillo is the registered owner of the vehicle driven by Defendant. Carillo was arrested on June 9, 2005 for smuggling 54.80 kilograms of marijuana into the United States. He was sentenced to 121 days in San Diego County jail. Carillo was in custody on the date of Defendant's arrest.

#### 2. Post-Miranda Statement

At approximately 4:00 a.m., on September 12, 2005, United States Immigration and Customs Enforcement (ICE) agents advised Defendant was of his Miranda rights. Defendant acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant told agents that he had recently moved from Sylmar, California to Sun Valley, California, but could not remember his address. He stated that he placed all of his belongings in storage and traveled to Michoacan, Mexico. He claimed that he left for Mexico on the first or second of September and returned to the United States on September 10, 2005. Defendant stated that he sold a Jeep Wrangler in Michoacan for $3,500. He then returned to the United States on September 10, 2005 and returned to Tijuana, Mexico, the next day driving his Volkswagen Golf. Defendant left the Volkswagen Golf in Mexico to test drive the 1994 Jeep Grand Cherokee.

Defendant indicated that he was driving to Sun Valley with the Jeep Grand Cherokee and if he liked it, he was going to purchase it for $2,700. Defendant claimed that the Boost mobile phone in his possession was from the company he worked for - AVM Woodworking in Van Nuys, California. Defendant stated that this company paid for the Boost mobile phone. Defendant denied knowledge of the drugs found in the Jeep.

**3. <u>AVM Woodworking, Inc.</u>**

ICE agents interviewed Alex Mendelis in 2005 and 2006. Mr. Mendelis confirmed that Defendant worked for AVM Woodworking, Inc. from May 2002 through August 2005, when Defendant was terminated. Mr. Mendelis contradicted Defendant's post-arrest statement by advising ICE agents that his company did not provide its employees with cellular telephones. In addition, Mr. Mendelis told ICE agents that he had spoken with Defendant a few weeks prior to February 26, 2006. Defendant told Mr. Mendelis that he was stupid and that it would not happen again.

**4. <u>DMV Documents, Parking Tickets and Utility Bills</u>**

At the time of his arrest, ICE agents found utility bills. After further investigation, ICE agents confirmed through documents and observing video surveillance that two utility bills were paid in early September 2005 during the time Defendant claimed he was in Mexico selling his car. In addition, ICE agents obtained certified DMV documents showing Defendant sold his car for $1,900, not $3,500, as he claimed during his post-arrest statement. ICE agents also confirmed that Defendant received a parking ticket on September 10, 2005 at approximately 3:00 a.m. in Los Angeles, California.

/ /

/ /

**B. OFFENSE CONDUCT ON AUGUST 26, 2007**

**1. Events Leading to Seizure of Methamphetamine and Marijuana**

On August 26, 2007, at approximately 7:10 p.m., Defendant drove a 1995 Honda Accord bearing California license plate number "5YNC208" into the vehicle primary lanes at the San Ysidro, California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. Untied States Customs and Border Protection Officer Velasco was working the primary lane when Defendant approached in the vehicle. Defendant presented his valid U.S. passport and claimed to be a U.S. citizen. Defendant told Officer Velasco that he had been in Mexico to visit his family and that the car belonged to his wife. During Officer Velasco's inspection of the car, he discovered clear sandwich bags hidden behind the glove box that contained a "joint" and glass pipes. The car was referred to the secondary lot.

In the secondary inspection area, Officer Madero field tested the green leafy substance in the first sandwich bag that was found behind the glove box, and it field-tested positive for marijuana. Another sandwich bag was found behind the glove box, which contained a white, crystalline substance that was separated into six personal use "baggies." Officer Madero tested the white, crystalline substance, which field-tested positive for methamphetamine. The marijuana weighed approximately 2.0 grams and the methamphetamine weighed approximately 600 milligrams.

**2. Defendant Was Processed Administratively**

Defendant was processed administratively. Defendant signed the petition for remission or mitigation of forfeitures and penalties. In pleading for Customs to reduce the fine, Defendant handwrote on the form that he was sorry for what happened and that the truth was it was easy for him to bring the drugs not knowing the crime or problem that it would cause. Customs assessed a civil fine of $5,000, which was later reduced to $500. Defendant signed an agreement to pay the monetary penalty. The car driven by Defendant was registered to a women, that was later determined not to be his wife. Customs seized the car and released Defendant.

**C. OFFENSE CONDUCT ON DECEMBER 4, 2007**

**1. Events Leading to Seizure of Marijuana**

On December 4, 2007, at approximately 5:30 a.m., Defendant drove a tan, 1993 Lexus S300 bearing California license plate number "6BCM522" into the vehicle primary lanes at the Otay Mesa,

California, Port of Entry. Defendant was the driver and sole occupant of the vehicle. The United States Customs and Border Protection Officer Renner was working the primary inspection lane when Defendant approached in the vehicle. Defendant said he was a United States citizen and presented a valid U.S. Passport. Officer Renner noticed that the license plate appeared new. Defendant stated that he was not bringing anything back from Mexico. Defendant told Officer Renner that he owned the vehicle and that he purchased it ten days earlier. However, Defendant's hands were shaking as he handed the vehicle's registration to Officer Renner. The title, which was dated November 18, 2007, showed that the vehicle was actually owned by "Francisco Aguilar," not Defendant. Defendant told Officer Renner that he lived in Tijuana, Mexico. Officer Renner swiped Defendant's passport and the computer-check indicated that Defendant had previously smuggled narcotics into the United States. Officer Renner referred the vehicle to the secondary inspection area.

In the secondary inspection area, Officer Boutwell received another negative declaration from Defendant. Canine Enforcement Officer Beyke screened the vehicle with her narcotics detector dog. The dog positively alerted to the driver's side quarter panel. A further inspection of the vehicle by Officer Becerra revealed two packages in the engine compartment. The packages contained a green, leafy substance that field-tested positive for marijuana. Defendant was arrested and escorted to the security office. The two packages of marijuana weighed approximately 2.32 kilograms. Defendant was arrested and escorted to the security office.

At approximately 2:20 p.m., Officer Moore screened the vehicle again with his narcotics detector dog. The dog positively alerted to the driver's side dashboard area. Officer Moore searched underneath the dashboard and saw an additional package wrapped in gray tape. Officer Becerra seized the package, which contained a green, leafy substance that tested positive for marijuana. The one package of marijuana weighed approximately 1.62 kilograms. The three packages seized from the vehicle weighed a total of 3.94 kilograms (or 8.67 pounds).

**2. Post-Miranda Statement**

At approximately 9:45 a.m., on December 4, 2007, ICE agents advised Defendant of his Miranda rights. Defendant acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant denied knowledge of the drugs in the vehicle, and told agents that he was on his way to San Felipe, Mexico when his vehicle broke down in Tijuana. Even though Defendant told agents that he was a mechanic, Defendant claimed that he had another mechanic in Mexico look at the vehicle. He believes this Mexican mechanic's name is also "Aurelio" and he must have put the drugs in the vehicle. Defendant said he lives in San Fernando. Defendant then changed his story about going to San Felipe, Mexico, and told agents that he traveled to Tijuana, Mexico, to visit his daughter. However, Defendant had told agents earlier that his daughter lived in Jalisco, Mexico, and not Tijuana. Defendant next claimed that he was on his way to Chula Vista courthouse to deal with a traffic violation.

After making the several inconsistent statements above, Defendant told agents that he purchased the Lexus two weeks ago in San Fernando, Mexico, for $3,000 from a person he knew as "Pancho," who Defendant also claimed was the registered owner, "Francisco Aguilar."

Toward the end of the interview, Defendant asked agents what benefit he would received if he were to tell them something different than what he already stated. The interview concluded.

### D. DEFENDANT'S CRIMINAL HISTORY

Defendant is a repeat drug offender. On February 20, 1998, Defendant pled guilty and was convicted, in the United States District Court for the Southern District of Texas, of possession with the intent to distribute less than 1 kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1), and received a sentence of 37-months prison and 3 years probation.

## III

## LEGAL ISSUES

### A. 21 U.S.C. §§ 952, 960: IMPORTATION OF A CONTROLLED SUBSTANCE

The United States must prove beyond a reasonable doubt that:

1. Defendant knowingly brought [marijuana] [methamphetamine] into the United States; and
2. Defendant knew that it was a [marijuana] [methamphetamine] or some other prohibited drug.

See 9th Cir. Crim. Jury Instr. 9.27 (2005).

/ /

**B. 21 U.S.C. §841(a)(1): POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE**

The United States must prove beyond a reasonable doubt that:

1. Defendant knowingly possessed marijuana or some other prohibited drug in a measurable or detectable amount; and

2. Defendant possessed the marijuana with the intent to deliver it to another person.

See 9th Cir. Crim. Jury Instr. 9.13 (2007).

It does not matter whether a defendant knew that the specific type of controlled substance – in this case, marijuana or methamphetamine. It is sufficient that a defendant knew it was some kind of prohibited drug. See 9th Cir. Crim. Jury Instr. 9.13 (2007).

Possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. See United States v. Magallon-Jimenez, 219 F.3d 1109, 1112-1113 (9th Cir. 2000). A defendant's mere possession of a substantial quantity of a controlled substance may show that the defendant knowingly possessed the substance. See United States v. Diaz Cardenas, 351 F.3d 404, 407 (9th Cir. 2003) (jury can infer knowledge when an individual is the driver and sole occupant of a vehicle containing 9.48 pounds of methamphetamine (4.31 kilograms) and 17.65 pounds of cocaine (8.02 kilograms) in the air bag of the vehicle.); United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (2.5 kilograms of cocaine sufficient to show knowledge and intent to distribute; secret compartment within a vehicle used to conceal illegal substances can raise an inference of connection between a defendant and the substance).

A defendant's mere possession of a substantial quantity of a controlled substance may show that the defendant knowingly possessed the substance. See United States v. Diaz-Cardenas, 351 F.3d 404, 407 (9th Cir. 2003) (stating that jury can infer knowledge when an individual is the driver and sole occupant of a vehicle containing 9.48 pounds of methamphetamine and 17.65 pounds of cocaine in the vehicle's airbag); United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (stating that, in case where 2.5 kilograms of cocaine were discovered in a vehicle's secret compartment, that the quantity of drugs alone is sufficient to show knowledge and intent to distribute).

Knowledge may also be proven by reasonable inferences from the high wholesale value of the narcotics. See United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as

to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation omitted); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir. 1976) ("value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute"); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the value of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States"). A jury can also infer knowledge from possession of a large quantity of drugs. See United States v. Diaz-Cardenas, 351 F.3d 404, 407 (9th Cir. 2003); United States v. Cervantes, 219 F.3d 882, 893 (9th Cir. 2000) (inferring knowledge from 30 pounds of methamphetamine and some drug manufacturing equipment); United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (inferring knowledge from possession of two kilograms of cocaine).

The United States can prove the "intent to deliver" element based on the following: the large quantity (United States v. Diaz Cardenas, 351 F.3d at 407); the manner in which the controlled substance was packaged (United States v. Glenn, 667 F.2d 1269, 1292 (9th Cir. 1982)); and the street value of the narcotics (United States v. Davila-Escovedo, 36 F.3d 840, 843 (9th Cir. 1994)).

**C. CHAIN OF CUSTODY**

The test of admissibility of physical objects connected with the commission of a crime requires a showing that the object is in substantially the same condition as when the crime was committed (or the object seized). United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991). Factors to be considered are the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of inter-meddlers tampering with it. United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981), cert. denied, 445 U.S. 856 (1982), overruled on other grounds, United States v. DeBright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc). There is, however, a presumption of regularity in the handling of exhibits by public officials. Harrington, 923 F.2d at 1374.

If this Court finds that there is a reasonable possibility that a piece of evidence has not changed in a material way, the Court has the discretion to admit the evidence. Id. The United States is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence. Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960).

**IV**

**WITNESSES**

The United States expects to call the following witnesses, although it reserves the right to change the order of these witnesses, substitute witnesses, add witnesses or omit one or more witnesses.

1. Immigration and Customs Enforcement Special Agent, Kenneth Hart (9/12/05)
2. Customs and Border Protection Officer, Gilbert Cisneros (9/12/05)
3. Drug Enforcement Agency Forensic Chemist, Lisa Kitlinksi (9/12/05)
4. Alex Mendelis (9/12/05)
5. Customs and Border Protection Officer, Daniel Madero (8/26/07)
6. Customs and Border Protection Officer, Aaron Velasco (8/26/07)
7. Immigration and Customs Enforcement Special Agent, Carol Bracamonte (12/4/07)
8. Customs and Border Protection Officer, Robert Renner (12/4/07)
9. Customs and Border Protection Officer, Jason Boutwell (12/4/07)
10. Customs and Border Protection Officer, Luis Beccera (12/4/07)
11. Drug Enforcement Agency Forensic Chemist, Sylvia Tarin-Brousseau (12/4/07)
12. Immigration and Customs Enforcement Special Agent, Jennifer Dorsey

The United States will call Immigration and Customs Enforcement Special Agent Jennifer Dorsey as an expert witness regarding the wholesale value (in Mexico and the United States) of the marijuana found in the each of the vehicles driven by Defendant. Agent Dorsey will also testify that 29.25 kilograms or 64.35 pounds and 3.94 kilograms or 8.67 pounds, of marijuana are each quantities that are intended for distribution and are not personal use amounts. Agent Dorsey will base her opinions upon her training, education and experience as an ICE Agent concerning narcotics investigations.

The United States will call Drug Enforcement Administration Forensic Chemists Lisa Kitlinski and Sylvia Tarin-Brousseau as expert witnesses regarding the consistency, weight, and test results of the contraband seized from the cars driven by Defendant in 2005 and 2007. Each chemist will also describe the process used to analyze the substance, including the receipt and handling of the contraband. Each chemist will opine that the sample tested is marijuana. Each chemist will base her opinion on her background, education, experience and training.

## V

## EXHIBITS

The United States reserves the right to add, delete or modify exhibits on its exhibit list up until the day of trial:

1. Photograph of Otay Mesa, California, Port of Entry
2. Photograph of San Ysidro, California, Port of Entry
3. Photographs of 1994 Jeep Grand Cherokee driven by Defendant
4. Photographs of 1993 Lexus S300 driven by Defendant
5. Photographs of engine and dashboard in which marijuana was hidden
6. Photographs of spare tire and gas tank in which marijuana was hidden
7. Photographs of packages of marijuana
8. Vehicles' registration information
9. DEA-7 Reports
10. Representative samples of marijuana
11. Certified DMV documents
12. Receipts for payments to utility companies in Los Angeles, California
13. Bank records and deposit receipts
14. Parking tickets
15. Tax returns
16. Paycheck stubs
17. Notice of Penalty and Demand for Payment
18. Payment Letter from Customs and Border Protection

/ /

/ /

/ /

/ /

/ /

/ /

## VII

## VOIR DIRE

The United States requests that the following voir dire questions be addressed to the jury panel in addition to the Court's standard jury questions:

1. This case involves the smuggling of marijuana and methamphetamine into the United States. Does anyone have strong feelings, for or against, about the laws of the United States relating to drugs? Does anyone believe that marijuana, methamphetamine, or any other drug, should be legalized? Would your views prevent you from being fair and impartial in this case?
2. The Court will instruct you about the law. Will you follow the law as given by the Court, even if you disagree with it?
3. Has any juror or a family member or close friend ever been arrested or the subject of an investigation by law enforcement? Would that experience prevent you from being fair and impartial toward law enforcement?
4. The United States will call officials with the Bureaus of Immigration and Customs Enforcement, Customs and Border Protection, and Drug Enforcement Administration officials as witnesses. Does anyone have any experience with, or knowledge of, these federal agencies? If so, would that prevent you from being fair and impartial?
5. Has anyone had an unpleasant or negative experience with any law enforcement personnel? Would that cause you to be biased against law enforcement?
6. Has anyone ever had any disputes with any agency of the United States Government? If so, please describe.
7. Have you or any relatives or close friends ever been accused of, or charged with, a crime? If so, please approach the bench.
8. Has anyone had any training in the law? If so, please explain.
9. Does everyone understand the difference between circumstantial and direct evidence and that they may be given identical weight in your deliberations? Will anyone have trouble giving circumstantial evidence the same weight as direct evidence?

10. Do you understand you cannot consider any feelings of sympathy or pity you may have for the Defendant when deciding the facts of this case?

11. Have you or any relatives or close friends ever had addiction problems with alcohol or drugs? If so, please approach the bench.

12. Does anyone feel that due to philosophical, moral, religious or other reasons that he/she would have difficulty finding the Defendant guilty even if the United States had proven its case beyond a reasonable doubt?

The United States respectfully reserves the right to submit additional questions prior to trial.

**VIII**

**JURY INSTRUCTIONS**

Proposed jury instructions will be filed under separate cover. The United States reserves the right to submit additional instructions at the Rule 30 conference.

DATED: September 12, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant U.S. Attorney